LYMAN COUNTY, Appellant, v. WHITBECK et al, Respondents.

(223 N. W. 204.)

(File No. 6663. Opinion filed January 26, 1929.)

*A. C. Miller,* of Kennebec, for Appellant.

*M. Q. Sharpe,* of Kennebec, and *M. A. Brown,* of Chamberlain, for Respondents.

POLLEY, J. This is an appeal from an order sustaining a demurrer to plaintiff's complaint. The defendants Whitbeck and Holmes were copartners engaged in the banking business under the firm name and style of Whitbeck & Holmes, Bankers. The defendants Ketelson, Sletto, McLarnan, and Casey are sureties on a bond furnished by Whitbeck & Holmes, Bankers, as depositaries of the county funds of Lyman County. The complaint alleges:

"That said bank by and through its officers had heretofore, to wit: on March 24, 1925, made a written application, duly filed in the Auditor's office on March 31, 1925, to be appointed as a County depositary, a copy of which said application is hereto attached and marked Exhibit C and made a part hereof the same as though fully incorporated herein, and that the said bank did file therewith on the 31st day of March, 1925, its Bond as a County depositary, a copy of which said bond is hereto attached and marked Exhibit D and made a part hereof the same as though fully incorporated herein, which said Exhibit D had heretofore been executed by each of the defendants in this action; and that thereupon on the ninth day of April, 1925, the Board of County Commissioners of Lyman County, South Dakota, in regular session assembled, relying upon said Bond, Exhibit D, did duly and legally designate by its motion and resolution to that effect the said Whitbeck & Holmes, Bankers, as a depositary for County funds.

That at all times subsequent to March 31, 1925, the date on which said Bond of County Depositary was filed, and subsequent to April 9, 1925, the date on which said bank was designated as a County depositary the County Treasurer of Lyman County, South Dakota, did use the said bank as a County depositary and did deposit funds belonging to Lyman County therein relying upon said Bond and relying upon the designation as a County depositary theretofore made."

In the said application designated as Exhibit C, it is stated that the capital and surplus of the said Whitbeck & Holmes Bank is $10,000.

The conditions of the bond filed by the defendants are as follows:

That we A. C. Whitbeck and H. B. Holmes, partners doing business under the firm name of Whitbeck & Holmes Bankers of Vivian, South Dakota, as principals and Carl C. Ketelson and Evan K. Sletto and Howard W. McLarnan and Joseph F. Casey, as sureties, all of South Dakota, are held and bound unto Lyman County, South Dakota, a public corporation of the state of South Dakota, in the sum of ten thousand dollars for the payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally by these presents:

"The condition of the above obligation is such that, whereas, A. C. Whitbeck and H. B. Holmes, partners doing business under the firm name of Whitbeck & Holmes Bankers of Vivian, South Dakota, have been designated as a depository of Lyman County, South Dakota, for the deposit of public money according to law.

Now therefore, if such depository shall at the end of each and every month render to the County Auditor of Lyman County, South Dakota, a statement showing the several daily balances of said County held by it during the month, and shall on the first day of each month report to the County Auditor of said County the amount of the accrued interest credited to the said county, and that the said funds together with the accrued interest will be paid upon the check of the County Treasurer of said County, countersigned by the County Auditor of said County, upon presentation, and shall pay over the said funds and accrued interest upon such check so countersigned as aforesaid, the above obligation to be void, otherwise to remain in full force and effect.

"Dated March twenty fourth, one thousand nine hundred and twenty five."

The complaint further alleges that on or about the 24th day of June, 1926, the said bank suspended business, and was taken over by the superintendent of banks for liquidation; that on said date there was on deposit in said bank funds belonging to plaintiff in the amount of $5,334.19, and that no part of said funds have ever been paid to the plaintiff; that the defendants had failed to render to plaintiff any statement showing the balance of money belonging to said county held by defendants, and have wholly failed to make any reports to the county auditor of the plaintiff county showing the amount of funds belonging to plaintiff that were on deposit in said bank at the time of its suspension.

It is further alleged that on or about the 9th day of September, 1926, the county treasurer of the plaintiff county drew a check signed by said county treasurer and the county auditor of said county directing said bank to pay the said sum of money to the said county treasurer; that said check was duly presented to the defendant bank for payment, but that payment thereof was refused; and that the said sum of $5,334.19 is still due said county from the said bank.

It is also alleged in the complaint that on or about the 20th day of February, A. D. 1926, the said bank made a second application for appointment as depositary of the funds of the said county. With this application the applicants tendered the same bond that had been filed with the application that was made in March, 1925, and thereafter, on the 4th day of March, 1926, the board of county commissioners made an order appointing and designating the said bank a depositary of the county funds. But there is no allegation in the complaint that the sureties on the bond consented that the bond might be used on this second occasion, nor that any money had been deposited in said bank after the making of said order. Without such consent, there was no liability for funds, if any, that were deposited after the making of said order. If such consent was given and funds were deposited thereafter, such acts should have been alleged in the complaint.

Defendant demurred to the complaint upon the ground, among others, that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was sustained, and in the order sustaining said demurrer is the following finding and direction by the trial court, to wit:

"That the demurrer of the defendants to the complaint of the plaintiff, be and the same is hereby sustained upon the merits, and it appearing to the court that the matter toward which the demurrer is directed is a substantive and material part of plaintiff's alleged cause of action, and that the defect could not be remedied by amendment."

"It is further ordered, that final judgment may be entered dismissing the above entitled action upon the merits."

From this order, plaintiff appeals.

The law directing county treasurers to deposit county funds in state, private, or national banks was first enacted in 1897 (chap-

ter 104, L. 1897). This law contained a provision requiring the treasurer to take security for the funds deposited in such bank. The two provisions of law with slight changes have been in force continually since the above enactment. See sections 349 and 350, Revised P. C. 1903, chapter 125, L. 1903, chapter 159, L. 1915, section 8, article 3 of chapter 102, L. 1915, chapter 204, L. 1917, section 6888, Code 1919, chapter 335, L. 1921, chapter 297, L. 1923, chapter 295, L. 1925. During the years from 1915 to 1923, the banks that had complied with the provisions of the bank guaranty law were exempted from the requirement that they must furnish security as county depositaries. But there was no law enacted from 1897 down to date that prohibited the county treasurer from taking security from county depositaries or that declared such security, if taken, void.

██ Respondents have presented their argument in support of their demurrer under four separate heads, but their entire case is based upon the single proposition that, at the time the bond was given, there was no law in force that required the treasurer to take security from the bank for the county money he deposited in it, and that for that reason there was no consideration for the bond in this case and no liability thereon. This contention is based upon the following facts: The application was made on the 24th day of March, 1925. On this date chapter 295, L. 1925, by reason of the emergency clause attached thereto, was in force. This law requires any bank, when making application to become a county depositary, to state the amount of money it desires and the rate of interest it will pay. It also provides that no bank shall at any one time have on deposit county funds in excess of the capital and surplus of such bank. In its application made on the 24th day of March, A. D. 1925, the bank stated that its capital and surplus amounted to $10,000; it asked for a deposit of that amount, and offered to pay 1 per cent interest thereon. It also tendered the bond involved in this case. But by reason of section 2 of chapter 295, L. 1925, the provisions of section 1 of the act, relating to the giving of security by depositors (depositaries) did not take effect until the 1st day of February, 1926. The effect of this section was that the provision in chapter 297, L. 1923, relating to the giving of security by depositaries, was in effect when this application was made on the 24th day of March, 1925. The provision in chapter 297, L.

1923, relating to security for deposits of county funds, is as follows:

"Provided, that such applicants as are not protected by the state bank guaranty fund shall have furnished a good and sufficient bond to the county as now required by law." Under this provision it might be, though we do not so decide, that the bank was entitled to be made a depositary without furnishing security. And it may be, though we do not so decide, the bank could have compelled the county commissioners to designate it a depositary, but, as we have already seen, there is no law prohibiting the taking of security, nor declaring such security, if given, void; and certainly the taking of such security is not contrary to public policy. The bond involved in this case is general in its terms. Its obligation is not limited by any particular statute, nor confined to the liability provided for by any statute. It is a plain common-law contract whereby the sureties bind themselves to indemnify the county for any loss, up to the amount named in the bond, that the county might suffer by reason of having deposited its funds in the Whitbeck & Holmes bank.

This proposition is not new to the courts. Ordinary v. Heishon et al, 42 N. J. Law, 15, was a suit on a guardian's bond. The bond did not conform to the statutory requirements. In its discussion, of the bond the court say:

"The statute evidently exacts a separate bond with respect to the estate of each minor, and that the condition of such instrument shall be general, covering the whole field of official duty, while here is an obligation that pertains, in a joint form, to the estates of two infants, and in a crude, awkward, and inefficient mode, attempts to particularize the duties to be performed. But these deviations from the standard erected by the statute do not impose any additional burdens on the guardian or his sureties, for, unfortunately, their entire effect is to narrow the security to which the minor was entitled, and to perplex his remedy. The act of tendering such a bond as this, as the security called for by the statute, was an act of great carelessness on the part of the guardian and his sureties, and the acceptance of such instrument by the surrogate or the court, was conduct still more censurable; but it would seem to be irrational in the extreme, to conclude that by reason of such improprieties, these sureties are to be absolved from all re-

sponsibility, and these innocent minors be left without redress. We have not adopted, in this state, the doctrine that, because a bond of this class does not conform to the statutory definition that it becomes, for that reason alone, unenforceable. In such a condition of things, the strong leaning of the courts has been to hold such instruments valid, to the full extent of their terms, so far as they embody the statutory policy, as voluntary obligations. Inhabitants of Woolwich v. Forrest, [2 N. J. Law] Penn. 116; Hoboken v. Harrison, 1 Vroom [30 N. J. Law] 73; Sooy ads. State, 9 Vroom [38 N. J. Law] 324. Consequently, the bond on which the action rests, is to be treated as valid, and is to be enforced according to the legal effect of its stipulations."

Manitowoc County v. Truman et al, 91 Wis. 1, 65 N. W. 307, was a case to recover on a bond given by a bank to secure county funds deposited under a statute very similar to the statute involved in this case. The bond did not in all particulars comply with the requirements of the statute. The Wisconsin court held the sureties liable, and in its discussion of the bond the court say:

"It would seem that the right to so contract for the payment implies the right to fix the terms of the contract, so long as it is not repugnant to any of the provisions of that section, nor to any statute, nor to any principle of public policy. The authorities go further, and hold, in effect, that an obligation entered into voluntarily and for a sufficient consideration, unless it contravenes the policy of the law or is repugnant to some statute, is valid at common law, notwithstanding the attempt may have been to execute it pursuant to a statute with the terms of which it does not strictly comply"—citing Barnes v. Brookman, 107 Ill. 318; Sooy v. State, 38 N. J. Law, 324; Ordinary v. Heishon, 42 N. J. Law 15; U. S. v. Linn, 15 Pet. 311, 10 L. Ed. 742; U. S. v. Hodson, 10 Wall. 395, 19 L. Ed. 937.

U. S. v. Tingey, 5 Pet. 115, 8 L. Ed. 66, was a case upon a bond, some of the provisions of which were not required by law. The court say:

"We hold that a voluntary bond taken by authority of the proper officers of the Treasury Department, to whom the disbursement of public moneys is entrusted, to secure the fidelity in official duties of a receiver or an agent for disbursery of public moneys, is a binding contract between him and his sureties, and

the United States; although such bond may not be prescribed or required by any positive law. The right to take such a bond is in our view an incident to the duties belonging to such a department; and the United States having a political capacity to take it, we see no objection to its validity in a moral or a legal view."

Sooy v. State, 38 N. J. Law, 324, was a suit on a bond given by a state treasurer. The defense was, as it is in this case, that the bond was not required by any law, and therefore imposed no liability on the sureties. The court refused to adopt that view, saying:

"There is abundant authority for the proposition that a bond, not exactible by law, but given without compulsion, by an officer, conditioned for a faithful discharge of his duty, is valid. In the case of The People v. Collins, 7 Johns. [N. Y.] 554, it is said: 'The general rule is that a bond, whether required or not by statute, is good at common law, if entered into voluntarily, and for a valuable consideration, and if not repugnant to the letter or policy of the law.' "

See, also, Barnes v. Brookman, 107 Ill. 317, where it is said:

"We have several times held that an obligation entered into voluntarily, and for a sufficient consideration, unless it contravenes the policy of the law, or is repugnant to some provision of the statute, is valid at common law, notwithstanding the attempt may have been to execute it pursuant to a statute with the terms of which it does not strictly comply."

And to the same effect is State v. Findley, 10 Ohio, 51.

In this case the bond was executed voluntarily. It was approved and accepted by the county commissioners, and in consideration thereof the bank was made a depositary and funds belonging to the county were deposited accordingly. But it does not appear from the complaint what part, if any, of the $5,334.19 in the bank when it failed, was deposited there prior to the 4th day of March, 1926, the date of the making of the second order. For so much of said money as was deposited prior to said date the sureties are liable, but such amount should be shown by the complaint. If the sureties consented to the use of the bond on the second application, they are liable for the whole amount.

 The fact that a second application was made, and that the applicant in one application offered to pay interest on the de-

posits, and in the other application offered no interest at all is wholly immaterial. The liability of the sureties is fixed by the bond itself. No distinction is made between principal and interest so long as the amount claimed does not exceed the amount fixed by the bond.

The demurrer was properly sustained, but the court erred in directing the dismissal of the action. The order appealed from will be so modified as to give the plaintiff an opportunity to amend its complaint, if it so desires.

BROWN, J., disqualified and not sitting.

SHERWOOD, P. J., and BURCH and CAMPBELL, JJ., concur.