KINGSBURY COUNTY, Respondent, v. ANDREWS et al, Appellants.

(225 N. W. 216.)

(File No. 6692. Opinion filed May 7, 1929.)

D. A. *Crawford* and *Wm. H. Warren,* both of De Smet, for Appellants.

*Harry J. Eggen,* of De Smet, and *Null & Royhl,* of Huron, for Respondent.

MISER, C.  On February 14, 1925, appellants, as sureties for De Smet National Bank—then a designated depositary of funds of Kingsbury county—executed a depositary bond by the terms of which they declared themselves "held and firmly bound unto the County of Kingsbury * * * in the sum of * * * $50,000.00 * * * for the payment of which well and truly to be made, we bind ourselves * * * jointly, severally and firmly by these presents *for a term of three years."*

The conditions of the bond were as follows:

*"Whereas,* The above bounden, De Smet National Bank of De Smet, South Dakota, has been duly designated as a depositary of funds of the said County of Kingsbury, for the safe keeping and payment of such funds and the accretions thereof, pursuant to the provisions of the law of the State of South Dakota, relative to the appointment, establishing and bonding of the depositary of public funds of counties:

*"Now therefore,* if such depositary * * * shall pay all checks legally drawn upon it by said County, executed by the County Treasurer and attested by the County Auditor of said County, in

the manner required by law, upon presentation thereof, and shall fully and completely comply with all of the provisions of the laws of the State of South Dakota, relative to depositaries, then the above obligation to be void, otherwise to be and remain in full force and effect."

This bond was approved by the county commissioners on February 18, 1925. On April 9, 1925, De Smet National Bank and other banks were again designated depositaries of county funds.

Section 6888, R. C. 1919, which relates to applications by banks to be designated as county depositaries, method of deposit and duty of county board in approving such application was amended by chapter 295, Laws of 1925. In this amendment, there appears the following language: "Provided that such applicants may furnish a good and sufficient bond to the county. *Provided, further, that such applicants may deposit in lieu of such bond, bonds, certificates of indebtedness, treasury certificates of the United States, bonds of any Federal Land Bank or Federal Intermediate Credit Bank or Joint Stock Land Bank of the United States or bonds of any territorial or insular possessions of the United States or bonds or securities of any kind issued by the State of South Dakota, or bonds of any state or territory of the United States, the par value of these securities equalling at all times the amount of funds on deposit. Provided, further, that the applicants may deposit in lieu of the above listed securities, bonds of any school district or municipality within the State of South Dakota or warrants of any county, municipal corporation or school district within the State of South Dakota, or first real estate mortgages on farm lands within the county, same to be accepted wholly at the discretion of the board of county commissioners.*"

On February 1, 1926, the provisions of chapter 295, Laws of 1925, above quoted, went into effect. On April 8, 1926, the following resolution was adopted: "Be it resolved by the Board of County Commissioners of Kingsbury County, South Dakota, that before any bank, applying for the keep of County funds shall be designated as County Depositary, said bank shall first furnish to said County an approved surety bond in an amount not less than the amount of said deposit. [Here is set forth in the resolution the exact language of chapter 295 above italicized.]" The inference is plain that the commissioners intended to act under the sanction

of said amendment. On the same day that this resolution was adopted, the De Smet National Bank and other banks were again designated as depositaries for county funds subject to the above resolution.

The oral evidence shows that about 11 days later, being about April 19, 1926, the cashier of the bank appeared before the board of county commissioners and inquired whether its members did not consider the bond of February 14, 1925, perfectly good. This bond had at all times since February 16, 1925, been on file in the county auditor's office. The members of the board replied that they did consider it good, but preferred Liberty bonds as security. The cashier said that in about 30 or 40 days he could put up either Liberty bonds or first mortgages. Thereupon, it was agreed to let the bond stand until the bank could get other security. At this meeting the cashier said to the state's attorney, who had been called into the meeting by the commissioners: "Isn't this [the bond of February 14th, 1925] a surety bond?" To which the state's attorney replied: "Yes, it is a surety bond; and if it is all right with the Commissioners, it can stand as far as I am concerned." The commissioners talked about the bond, and all agreed that the bond was good and satisfactory, and that it should stand. No record was made in the minutes of the board of this discussion between the cashier, the board, and the state's attorney. On May 21, 1926, the bank failed. From a judgment in favor of the county for the amount then on deposit, and from the order denying the motion for new trial, the sureties appeal.

Appellants contend: First, that the words "an approved surety bond," in the resolution of April 8th, mean "a bond executed by a surety bonding company authorized to do business in this state"; second, that, therefore, by the appointment of April 8th, subject to that resolution, the former term of the office of the bank as a depositary was ended unless and until it should furnish a depositary bond of an entirely different character from the existing one; that the former appointment was thereby terminated, and, by operation of law, the bond sued on was terminated; third, that therefore appellants were liable only for the $17,447.72 then on deposit; fourth, that because the deposits thereafter made were not protected by the bond, and because the withdrawals exceeded $17,447.72, appellants were liable in no sum whatever when the bank failed, although there was then $6,739.58 on deposit.

As to the first of the above contentions, there is nothing in the resolution itself and little in the testimony to support it. Neither the language of chapter 295, supra, "a good and sufficient bond," nor the language of the resolution, "an approved surety bond," excludes the idea of an approved personal surety bond. The statute defining "surety" makes no such distinction. Section 1498, R. C. 1919. When the Legislature deemed it advisable to require corporate surety for the protection of *state* funds, it used not only the words "a good and sufficient surety bond"—section 6875—but in the next section said: "The word 'bond,' as used in the preceding section, shall be held to mean a bond furnished by a surety company. * * *" Section 6876. No such provision occurs in section 6888, nor in the article relating to county deposits of which it is a part, nor in the amendments thereto by chapter 297, Laws of 1923, or chapter 295, Laws of 1925. Nor does a comparison of chapter 297, Laws of 1923—in compliance with which the bond sued on was given, and on the assurance of which bond county moneys were admittedly deposited until April 9, 1926—with chapter 295, Laws of 1925, in reliance on which the resolution of April 9th was apparently drafted, disclose any adequate statutory basis for giving to the language of the resolution the construction on which appellants' first and second contentions depend.

On this point, also, appellants complain of the admission of oral testimony, part of which has been heretofore set out. Such oral testimony only tended to confirm the reasonable intendments of the language of the resolution itself; that is, that the security desired by the county commissioners at the time of its adoption was "an approved surety bond"—which they already had—or more tangible security such as Liberty Bonds and first mortgages which under the sanction of chapter 295—they could demand, and which they preferred. If there was an error in the admission of the oral testimony complained of, it was without prejudice to appellants.

But appellants also contend that the term of the bond sued on was one year, despite the inclusion of the phrase "for a terms of three years." Appellants contend that the bond is a statutory bond, that the statute presumes an annual designation, and that the phrase above quoted should be ignored as surplusage. This court has already discussed some of the phases of this contention

in Lyman County v.Whitbeck, 54 S.D. 317, 223 N.W. 204. Appellants apparently ignore the fact that the designation referred to in the bond was made in 1924, whereas the bond was given on February 14, 1925; that the bank was redesignated on April 9, 1925, without a new bond being given, and that all the deposits from April 9, 1925, to April 8, 1926, were made on the protection of this bond. Appellants do not contend that their liability did not extend to the deposits made during that year. Despite the punctuation and placement of the phrase "for a term of three years," to which appellants point as casting doubt on such intention, we are of the opinion that appellants agreed when they signed the bond in suit that the depository bank could make use of said bond to secure deposits for the term of three years, and consented that the county might rely on said bond for protection of public funds deposited by it during that term of three years. It was so accepted by the county. It is not material in this case whether such three-year term embraced, as between the county and depositary, a single designation or several designations. All the deposits for the repayment of which action on this bond was brought were within that three-year term. This view of the case renders unnecessary the determination of the question of the length of time for which a county depositary is designated in the absence of specific term in the order, or whether, if the term ended on April 8, 1926, more than a reasonable time had elapsed in which the county might have withdrawn its funds before the bank's suspension, or whether the withdrawal of sums in excess of the balance of April 8, 1926, left no balance for which appellants were liable. To discuss all these questions and other errors assigned which were without prejudice to appellant would unnecessarily extend the opinion.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.

MISER, C., sitting in lieu of BROWN, J.