[File No. 5970.]

COUNTY OF EMMONS, a Municipal Corporation of North Dakota, Respondent, v. GUSTAV KLEPPE, John A. Beal, G. G. Scheeler, John E. Holsti and E. R. Holsti, Appellants.

(238 N. W. 651.)

Opinion filed October 26, 1931.   Rehearing denied November 12, 1931.

*Arthur B. Atkins* and *Coventry & Thompson,* for appellants.

*George W. Lynn,* for respondent.

BURR, J. The county sues upon two bonds, each in the sum of $10,000, dated May 8, 1924 given by the Security State Bank of Kintyre for the re-payment of county funds, these defendants being the sureties. This action is known as No. 5970, there being a companion case known as No. 5971, ante, 534, 238 N. W. 655.

The defense is the bank was never appointed a depository; that the officers of the bank had no authority to execute the bonds; that no default occurred during the life of the bonds nor is anything due the plaintiff from the bank; that a substitute bond was given for these bonds; that in any event the notices required by the terms of the bonds to be given to the sureties were never given as required, and that the plaintiff is estopped by reason of its negligence and laches.

The case was tried to the court and findings of fact and conclusions of law were made in favor of the plaintiff for the recovery of $9,798.98 with interest from August 18, 1930. From the judgment entered the defendants appeal.

Without passing on every objection to the introduction of evidence it is sufficient to say the evidence shows:

On July 30, 1923 the bank presented to the county commissioners of Emmons County two bids as a depository for the funds of the county. The bids were accepted, and on May 13, 1924 the bank was required to furnish two bonds, each in the sum of $10,000 as security. Two bonds practically identical though not duplicates, and having no time limit of liability specified therein, were furnished with defendants as sureties. They are dated May 8, 1924, were approved by the state's attorney on the 13th day of May, 1924, and by the chairman of the county Board on the following day.

Up to April 20, 1928 the plaintiff had deposited with the bank on time deposit various amounts so that on the 20th day of April, 1928, the county held a time certificate of deposit for $11,164.80. That day the bank issued a new certificate of deposit for this amount payable "on the return of the certificate endorsed (6 or 12) months after date with interest at 4 per cent."

May 13, 1928 the county had $5,783.18 on deposit in the bank sub-

ject to check. Thereafter the county checked out at different times $10,805.63, but from time to time had made deposits amounting to $11,655 subject to check. Thus the checking account on hand when these bonds expired in May, 1928 was paid subsequently to the county.

The bank closed its doors in December, 1928, and in February, 1929 the county treasurer filed proof of claim against the bank showing $11,164.80 due on the certificate of deposit with interest amounting to $308.90, and $6,632.55 on the amount subject to check, and $7.93 in interest, which claim was allowed by the receiver in full, $18,114.18.

Prior to this time, but subsequent to the closing of the bank, the board of county commissioners instructed the state's attorney to investigate the bank "in so far as it applies to the county funds therein and report at the next meeting of the Board."

On the 4th of April, 1929, the board instructed the state's attorney to notify the sureties and to start action on the bonds to recover the funds. In May an action was commenced against four of the sureties and one other person which action was later dismissed.

In December, 1929, the receiver of the bank paid in dividends the sum of $1,674.72 on the certificate of deposit. In August, 1930, the county treasurer presented a check upon the bank for a sum in excess of $5,600 which check was not paid by the bank because of lack of funds.

On September 5, 1930 the county treasurer served notice upon each of the sureties notifying him of the default in payment and demanding payment of the sum of $15,397 which demand was refused.

There are thirty-seven specifications of error; but there are but two real issues involved. The claim that the bank had never formally designated a depository is without merit. It bid for deposits, furnished bonds, received and paid out money as a depository and the sureties gave the bonds for this purpose. Hence they are estopped from making this claim. Dickey County v. Gesme, 51 N. D. 272, 199 N. W. 873.

Defendants' first main contention is that no default occurred during the life of the bond. To substantiate this they urge, first, that there being no time limit of liability fixed by the bond, the bond expired in four years from its date, and that during said time there was no refusal on the part of the bank to repay any moneys held by it; second, that the bond was cancelled in January, 1928, because of the provisions

of chapter 227 of the Session Laws of 1927; and, third, that a "new and different bond" was given in lieu of these bonds.

The bonds were approved and accepted May 13, 1924, and as neither contained any time limit of liability it expired by statutory limitation four years from this date. See § 714a7 of the Supp. Hence there was no liability on these bonds for deposits made after May 13, 1928.

However lack of default prior to May 13, 1928, does not release the sureties from liability for deposits made during the life of the bonds where the bonds contain the agreement that the bank will "well and truly account for and pay over . . . all funds so deposited with it as such depository with interest" and will "well and truly perform all . . . conditions . . . to be kept and performed." See School Dist. v. Stomberg, ante, 6, 236 N. W. 728.

Appellants say the bonds were cancelled by the adoption of a new law regarding public depositories known as chapter 227, Session Laws 1927.

This law purports to amend and re-enact §§ 714a8 and 714a13 of the Supp. It does not purport to amend or in any way change the provisions of § 714a7 of the Supp. being § 7 of chapter 199 of the Session Laws of 1923. This chapter 199 is a law complete in itself. It makes provision for the designation of depositories for public funds, and so far as time limit is concerned makes but one distinction—a distinction between depositories for State and State Institution funds on the one hand and depositories of other public funds on the other. In the former case the depositories remain as such until further designation. There is no time limit on the life of the bonds. In the latter case there is no time limit for designation but the bond continues for a period not exceeding four years. The statute says: "This bond shall be a continuing bond and shall continue binding until the proper board . . . shall require a new or different bond, but in no case . . . shall such bond be continued without a renewal thereof for a longer period than four years." The depository remains a depository, but a new bond must be furnished every four years if not otherwise required. Thus the designation of the bank as a depository was not for a definite stated period, but for an indeterminate period. It could remain a depository continuously but was required to furnish a new

bond every four years at least. Section 714a8 specifies the time when such a board as the county commissioners would be required to "examine all outstanding bonds and require new bonds *whenever necessary* in order to comply with the provisions of this law." Such a board was required to "designate depositories of public funds" at the meeting stated. If depositories had already been designated and the bonds were sufficient there was no necessity for a re-designation.

Prior to the adoption of this new law the county commissioners were required to meet in July of each odd numbered year for the purpose of designating depositories of county funds. Accordingly the county commissioners of Emmons county met July, 1923, for this purpose; but while the bids were received at that time the contract with the depository was not closed until the furnishing and approval of the bonds in May, 1924. The bonds involved herein were contracts with the county which were to continue in force for four years.

By the terms of the new statute, chapter 227 of the Session Laws of 1927, the board is required to meet in January of each even numbered year, and examine outstanding bonds "whenever necessary in order to comply with the provisions of this law." The "law" was the law in force then and as amended by chapter 227 of the Session Laws of 1927. The new law changed the time when the various boards would designate depositories from July in odd numbered years to January of even numbered years. It did not cancel all contracts already made by changing this time for the designation of depositories.

Chapter 227 of the Session Laws of 1927 while it amends § 714a8 as to time of designation does not change the duties of the county board. This amendment took effect July, 1927. Thus contracts with the depositories might expire between July, 1927 and January, 1928 —the time set for the meeting of the board—and there being no bond to safeguard the deposits during such period. To meet this contingency the legislature provided in the law "that depositories designated prior to the taking effect of this act shall continue as such depositories until after the meeting of the Board in January, as herein provided.

"And provided further, that such Governing Board at a meeting of said Board to be held not later than the third Tuesday in July, 1927, shall assemble and examine all outstanding bonds and require new bonds to cover the period between the expiration, if any, of such bonds

to the date of the qualification of such depositories appointed at the meeting of such Board in January following."

But this did not affect the bonds in question for they were to continue in force until May of 1928. Therefore it was not necessary for the county board, at the special meeting in July, 1927 to require a new bond from this depository. The first proviso refers to depositories that otherwise would cease to be depositories because the time limit of their bonds would expire. That this is the intention is evident from the succeeding proviso. In the case at bar the bonds did not expire until after the meeting in January. It is true the county board is presumed to have known this but in addition to these bonds involved here the bank furnished another bond in December, 1926, expiring December, 1930. Therefore it was not necessary for the board to re-designate this bank as a depository. It continued as such, was accepted as such, received deposits as such and the bonds guaranteed these deposits.

Appellants say, however, this statute means that all designations were cancelled by law after the January, 1928 meeting, no matter how long the bonds had to run, for the law says all depositories continue until the January meeting, implying they did not continue thereafter unless re-designated and therefore, the rule laid down in McHenry County v. Northern Trust Co. 51 N. D. 646, 200 N. W. 888 applied. But the law involved therein specifically designates the depository— the only depository—and provides penalty for depositing in any other bank. The law involved in this case does not do so. It permits a re-designation of this bank at any time, and if a depository already no new designation was necessary.

The evidence shows this bank continued to be a depository after the meeting in January, 1928, whether it was re-designated or not. It is not claimed by appellants that the county commissioners, at the meeting in January, 1928, or at any other meeting, cancelled any designation of this bank, nor that the bank asked for any cancellation. There is a provision in the bonds to the effect that the sureties may limit their liability as sureties to a certain day to be fixed by them "by giving written notice to the obligee of said sureties' election so to do at least thirty days prior to such date," and thus be liable only for deposits made prior to that date. It is not claimed the sureties took

advantage of this provision to limit their liability to deposits made prior to the January, 1928, meeting.

This contention of the defendants is urged by them because of the certificate of deposit, which was renewed after the January meeting in 1928, but within the time limit of the bond. Chapter 227 of the Session Laws of 1927 in no way affects the liabilities of the sureties on this bond.

Appellants contend that by mutual consent the obligations involved in these bonds were discharged, and a new bond substituted therefor. There is no finding to this effect nor is there evidence upon which such a finding could be based. The record does show that on December 22, 1926 these defendants, with the exception of Kleppe, but in conjunction with one Sundahl, on behalf of the bank as a depository executed a bond in favor of the county in the sum of $10,000, and that such bond was accepted.

The liability on this bond is the subject of the suit in the companion case. There is nothing to indicate that this bond was offered and accepted as a substitute. There is no record whatever showing demand for "a new or different bond." Section 714a7 of the Supp. the law in force when the bond of 1926 was given, contains this provision referring to bonds given by depositories:

"This bond shall be a continuing bond and shall continue binding until the proper board of public corporation shall require a new or different bond, etc. . . ."

This provision has reference to a substitute bond, not to an additional bond and the bond of December, 1926 appears to be an additional bond. It is the duty of the board of county commissioners to examine the bonds. If conditions have changed, sureties die or become financially embarrassed or otherwise the security of the deposits injured the board will demand "a new or different bond." In such case the old bond might be discharged. But it is also the duty of the county to demand additional bonds under certain conditions and the burden is upon the appellants to show that a bond running for four years was mutually abrogated.

This bond of 1926 could not have been given because of the provisions of chapter 227 of the Session Laws of 1927 for it was executed and delivered before the legislature met. Being executed during the

life of the bonds involved in this suit, with nothing to show it is a substitute, or that the bonds involved were cancelled we must hold the 1926 bond was an additional bond, not a substitute.

The second main issue deals with the proposition that no notice of "default on the part of said depository" was given to the sureties by the obligee "within ninety days after knowledge of such default was had by said obligee" as was required by the conditions of the bond.

It is true that "where funds are deposited in a bank, subject to payment on demand, and the bank is closed on account of insolvency, the deposit becomes due and actionable and no demand is necessary." Gilbertson v. Northern Trust Co. 53 N. D. 502, 42 A.L.R. 1353, 207 N. W. 42. But this disposes with demand merely. It does not affect the time of the commencement of the action, and in addition the checking account renewed by these bonds was paid as noted hereafter. Thus the rule cited has no application here.

The provisions in the bond as to the obligation of the bank, the rights of the sureties, and the notice of default to be given them are identical in language with those set forth in the decision of this court in the case of Keystone School Dist. v. Oster, 55 N. D. 245, 212 N. W. 928. The facts in this case with reference to the closing of the bank, the knowledge of the obligee as to the closing, the presentation to the receiver of proof of claim on the part of the obligee, its allowance, the partial payment thereon, the subsequent drawing of a check and presenting same to the receiver, its dishonor, the notice to the sureties and the subsequent suit are analogous.

On the strength of the holding of this court in the case cited we hold there is no merit in the claim of failure to give the sureties the notice of default required by the terms of the bond.

Appellants claim there is no proof of default in this case because the indebtedness upon which the judgment is based is a certificate of deposit, required to be presented to the bank for payment, that there could be no refusal to pay until the certificate was presented for payment and that a check drawn on the checking account was not presentation of the certificate. Default of the bank is not limited to any particular act. The sureties agree that the bank will pay on demand the funds deposited. This does not require the county to make a demand

for every cent in the bank before it can be said the bank is in default. If the bank has on deposit $10,000 subject to check, and fails to honor a check thereon for $10 because it has no funds to pay the $10 check it has failed to pay on demand and is certainly in default. There is no merit in this contention.

We have examined the other specifications of error and find them without merit.

The judgment entered in this case is less than the amount due the county from the bank at the time of the closing. This case was tried in conjunction with another known as No. 5971. This latter action was based upon the bond dated December 22, 1926. The two cases were tried together with separate judgments entered, doubtless because of difference in sureties. In entering these judgments the court had in mind the two suits and that the liability upon the bonds involved herein could not include any deposits made after May 13, 1928; but that the bond involved in the companion case would cover deposits made from December 22, 1926, until the time of the closing of the bank, including the certificate of deposit. But the checking account on hand May 13, 1928, was settled by the Bank. An authorized general deposit creates the relation of debtor and creditor between the county and the bank. , Shuman v. Citizens State Bank, 27 N. D. 599, L.R.A.1915A, 728, 147 N. W. 388. See also Blalock v. State, 166 Ga. 465, 474, 143 S. E. 426, 429. Undesignated payments are applied on accounts "earliest in date of maturity." See § 5779, Comp. Laws. When such checks are honored the credit is given on the deposit earliest in point of time. The sureties on the December bond could not insist that the debt on the checking account existing May 13, 1928 continued when checks to an amount in excess of this checking account of May 13 were presented and paid. See Redwood County v. Citizens' Bank, 67 Minn. 236, 69 N. W. 912.

The evidence shows that at the time of trial the bank owed on the certificate of deposit involved herein the amount for which the court ordered judgment in this case, and so the judgment of the lower court is therefore affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.