# TURNER COUNTY, Respondent v. PETERSON, et al, Appellants

## (283 N. W. 144.)

(File No. 8176.   Opinion filed December 30, 1938.)

318

*Alan Bogue,* of Parker, for Appellant A. J. Struble.

*Lee H. Cope,* of Yankton, for Appellant Nellie M. Gunderson.

*Tom Kirby,* of Sioux Falls, for Appellant Robert Peterson.

*Boyce, Warren & Fairbank,* of Sioux Falls, for Appellant Geo. H. Weeks.

*Danforth & Davenport,* of Sioux Falls and *Andrew S. Bogue,* of Parker, for Respondent.

RUDOLPH, J. This action was brought against the sureties on a bond to recover desposits made by the county treasurer of Turner County in the First National Bank of Centerville, South Dakota. The facts are as follows: The defendant, Peterson, was president and director of the Centerville bank; the defendants, Struble and Weeks, were directors of the bank; and the defendant, Gunderson, was a stockholder. In the year 1934 the Centerville bank was designated as a county depositary for Turner County under the provisions of Section 6888, R. C. 1919, as amended. To secure the deposits made by the county the present defendants executed a bond conditioned for the repayment of the monies deposited by the county in the Centerville bank. In 1935 the Centerville bank was again designated as a depositary for county funds. The defendants again executed a bond to secure the county deposits which is in words and figures as follows:

"Know All Men by These Presents:

"That the First National Bank, Centerville, South Dakota, as principal and Robert Peterson, A. J. Struble, Geo. H. Weeks and Nellie M. Gunderson, as sureties, of the county of Turner and State of South Dakota, are held and firmly bound unto the County of Turner in the State of South Dakota, in the sum of Fifty thousand Dollars, lawful money of the United States, the payment of which well and truly to be made, we bind ourselves, our heirs, executors and administrators jointly, severally and firmly by these presents:

"Sealed with our Seals and dated this 2nd day of April, 1935.

"The conditions of the above obligations are such that

"Whereas, the above bounden First National Bank, Centerville, S. Dak., has been duly designated as a depository of public funds of the said County of Turner for the safe keeping and payment of such funds and the accretions thereof pursuant to Sections 6888-6890 of the Revised Code of 1919 of the State of South Dakota, and any acts amendatory or supplementary thereto.

"Now therefore, if such depository shall at the end of each and every month render to the County Auditor of said Turner County a statement showing the several daily balances of the County held by it during the month, and shall on the first day of each month report to the Auditor the amount of the accrued interest credited to the said County, and that the said funds, together with the accrued interest will be paid upon the check of the County Treasurer of said County, countersigned by the County Auditor of said County, upon presentation, and shall pay over the said funds and accrued interest upon such checks so countersigned as aforesaid, the above obligation to be void, otherwise to remain in full force and virtue.

> "The First National Bank,
> "Centerville, South Dakota.
> "By Robert Peterson,
> "President.

"Attest:
"Nora M. Anderson, ,
        Asst. Cashier."

In 1936 the Centerville bank, pursuant to the resolution of its board of directors dated the 10th day of March, 1936, again made an application to the county commissioners of Turner County to be designated as a depositary of county funds for the year 1936. The defendant, Peterson, testified that the bank was to furnish a bond similar to that furnished in 1934 and 1935, and that a bond in blank which he had received from the county for that purpose had been signed by the defendant Struble. On April 7, 1936, the contemplated bond to cover the year 1936 had not been obtained by Peterson, and in response to a call from the county treasurer stating that the county commissioners were in session and designat-

ing depositaries, Peterson wrote the following letter to the treasurer: "I enclose the papers which have been completed in connection with this bank's application for designation as a County Depositary. As stated over the telephone Mr. Weeks is in the hospital and for that reason I can not complete the bond, this will be done as soon as Mr. Weeks returns from the hospital. In the meantime please hold the old bond which may be considered in full force and effect."

Upon the receipt of this letter from the defendant Peterson, the county commissioners consulted the state's attorney of Turner County and were advised that the 1935 bond was a continuing bond and would secure deposits made in the bank during 1936. The county commissioners thereupon designated the Centerville bank a depository for county funds for the year 1936, and the county treasurer did thereafter during the year make deposits in this bank. The defendants, Peterson, Struble, and Weeks, knew that the bank was receiving county funds during the year 1936. The defendant, Gunderson, did not have this knowledge. None of the defendants, except Peterson, knew of Peterson's letter herein set out, and the direction contained therein to "hold the old bond which may be considered in full force and effect", was without the authority of the other defendants. At the time of the 1936 designation there were county funds on deposit in the Centerville bank in a substantial amount. Thereafter, the county treasurer deposited funds in the bank and carried a running account until such time as the bank closed on December 19, 1936, at which time there was on deposit in the bank county funds in the sum of $25,797.11. Of this amount $5,000 was paid to the county by the Federal Deposit Insurance Corporation, and the county collected on certain collateral held by it $2,550, which made the county's claim against the bank amount to $18,247.11. This action is predicated on the 1935 bond to recover from the sureties on that bond the amount of the county's claim against the bank. The trial court adjudged a recovery for the amount in the bank at the time it closed after deducting the payment from the F.D.I.C. and the amount collected from the collateral. This is an appeal from the judgment and order denying the motion for a new trial.

We think it necessary to first place a construction upon Section 6888, R. C. 1919, as amended by Chapter 98, Laws of

1929, which was the law in force at the time the 1935 bond was executed. In the case of Kingsbury County v. Andrews, 55 S. D. 133, 225 N. W. 216, it was said, because of facts peculiar to that case, that it was unnecessary to determine whether this statute contemplated an annual designation of county depositaries. However, we believe, this question is presented in this case and we have concluded that the statute does contemplate an annual designation of county depositaries by the county commissioners. The statute provides that banks within the county shall make application for the privilege of keeping county funds. It then further provides "that if such banks fail to make application on or before the first day of April of each year * * * it shall be the duty of the county treasurer to advertise for applications * * *." Clearly these words contemplate that banks shall apply each year for the privilege of keeping county funds, and that the county commissioners shall ach year consider the application of the banks within the county ...d designate those in which county funds shall be deposited. The de 'gnation thus made, we are convinced, continues until such ..., as the statute contemplates another designation which under ou... nstruction of the statute would be for a period of one year.

U. der the facts here presented it is clear that all of the parties inv !·ed in the transactions relative to giving depositary bonds by the Centerville bank considered the designation by the commissioners of the Centerville bank as a county depositary to be effective for one year only, and that at the end of that year a new designation would be made and new security furnished. Each year, that is, in 1934, 1935, and 1936, the Centerville bank made its application for county funds, and each year it made provision for the securing of these funds. We think it clear under the facts as presented in this record that, when the 1934 bond was given, there was no thought either by the bondsmen, the bank, the county treasurer, or the county commissioners, that this bond was to secure any other funds than those deposited during the time covered by the designation of depositary made by the county commissioners in the year 1934. Equally clear it appears, we believe, that there was no thought in the mind of any one connected with any of these transactions at the time the 1935 bond was given that this bond should secure any deposits other than deposits made by the county during the time the 1935 designation was effective. Cer-

tainly, it appears from this record that it was within the contemplation of all the parties that when the 1936 designation was made, a new bond would be given to secure the deposits made during the period covered by the 1936 designation. This appears from the letter the president of the bank sent to the county treasurer, from the fact that at least one of the present defendants had attached his signature to a blank form of bond, and from the further fact that when the papers were presented to the county commissioners, their first concern was the fact that a new bond did not accompany the application.

We think it clear therefore that at the time the 1935 bond was given, there was no intention that this bond should cover any deposits made except during the time the 1935 designation was in effect; that such bond was accepted by the county to secure only those deposits made under the 1935 designation; and that the bondsmen never agreed when they signed the 1935 bond that the depositary bank could make use of said bond to secure deposits made for any year other than 1935. These conclusions clearly distinguish this case from the case of Kingsbury County v. Andrews, supra. The facts there disclosed that the bond in question contained the provision whereby the sureties bound themselves "jointly, severally and firmly by these presents for a term of three years." This court held that the bondsmen there agreed when they signed the bond in suit that the depositary bank could make use of said bond to secure deposits for the term of three years, and consented that the county might rely upon said bond for the protection of public funds deposited by it during that term of three years. We think no further discussion is necessary to make the distinction apparent.

The question now presented is whether or not the form of the bond was such that the commissioners might accept it for the purpose of securing the deposits made in 1936, and disregard the intention with which the bond was given. Respondent contends that the bond is in the form of a continuing bond, and that therefore the commissioners were privileged to use said bond to secure deposits made under the 1936 designation. Perhaps a sufficient reply to this contention would be that, even conceding that the bond might be construed as to form a continuing bond, it is not so clearly such as to exclude parol evidence to show the intention

of the parties. White's Bank of Buffalo v. Myles, 73 N. Y. 335, 29 Am. Rep. 157. But we do not believe that the bond is in form a continuing bond. The bond in express words provides that it is given to secure county deposits made in the Centerville bank which "has been duly designated as a depository of public funds * * * pursuant to Section 6888-6890 of the Revised Code of 1919 of the State of South Dakota, and any acts amendatory or supplementary thereto." Clearly, this bond was executed and offered pursuant to the said Section 6888, as amended. This court in the case of Thunder Hawk School District v. Western Surety Co., 58 S. D. 312, 235 N. W. 921, said: "When a bond is executed and offered pursuant to a requirement of statute, it will be presumed that it is the intention of all parties that the obligation of the bond is to be commensurate with the requirement of the statute, neither more nor less."

██ As we have heretofore held, the said Section 6888, referred to in the bond, contemplates an annual application to be made by the bank, and an annual designation by the county. It further provides that the applicant shall "furnish a good and sufficient bond to the county." The bond in suit referring specifically to the said Section 6888 and to the fact that the Centerville bank had been designated as a depositary thereunder, this section of our code became a part of the bond, and it nowhere appearing in the bond that it was intended to cover a period longer than that to which the 1935 application of the bond and the designation by the county related, we do not believe that this bond can be considered as a continuing bond even as to form. This court speaking with reference to a similar bond in the case of Lyman County v. Whitbeck, 54 S. D. 317, 223 N. W. 204, said: "It is also alleged in the complaint that on or about the 20th day of February, A. D. 1926, the said bank made a second application for appointment as depositary of the funds of the said county. With this application the applicants tendered the same bond that had been filed with the application that was made in March, 1925, and thereafter, on the 4th day of March, 1926, the board of county commissioners made an order appointing and designating the said bank a depositary of the county funds. But there is no allegation in the complaint that the sureties on the bond consented that the bond might be used on this second occasion, nor that any money

had been deposited in said bank after the making of said order. Without such consent, there was no liability for funds, if any, that were deposited after the making of said order. If such consent was given and funds were deposited thereafter, such acts should have been alleged in the complaint."

Such cases as Snattinger v. Topeka, 80 Kan. 341, 102 P. 508, and Manitowoc County v. Truman, 91 Wis. 1, 64 N. W. 307, cited and relied upon by respondent, are not in point due to the fact that the court in those cases held that no annual designation of depositaries was contemplated by the statute.

The judgment must be affirmed as to the defendant, Peterson, who by his letter of April 7, 1936, to the county treasurer, consented to be bound by the terms of the 1935 bond. This letter, however, was without the knowledge or the authority of the other defendants, and as to them the judgment must be reversed. The trial court found that at least two of these defendants knew that county deposits were being made in the bank in 1936, but this knowledge is not sufficient upon which to predicate liability against them under the bond they had given to secure deposits made in 1935. Nowhere is it disclosed by this record that these bondsmen knew that the commissioners were relying upon the 1935 bond in making the deposits during the year 1936. There is no element of an estoppel present, and we can find no basis for predicating liability upon the 1935 bond for deposits made in 1936 simply because of the fact that the defendants knew that deposits were being made in the bank during the year 1936.

There is another feature in this case which must have consideration. The record discloses that at the expiration of the 1935 designation of the Centerville bank as a depositary, a substantial amount remained in the bank which had been deposited during the time the 1935 bond was in effect. In 1936 the county treasurer deposited and withdrew from the bank large sums of money. We must therefore consider whether there is a liability under the 1935 bond for deposits made in the bank during the time this bond was in effect, and which deposits remained in the bank until it closed, and further if there is such liability, what method should be used in determining whether the deposits made under the 1935 bond remained in the bank until its closing.

If there remained in the bank at the time the bank closed

any money which was deposited under the 1935 bond, it is our opinion, the sureties on this bond should be held liable therefor. We are not concerned in this case with the liability of the 1935 sureties had a new bond been furnished to secure the 1936 deposits. Under the facts in this case the new arrangement as contemplated by the commissioners and by the bank was never completed. The commissioners retained the old bond, mistakenly believing that it would secure deposits made in 1936, but never intending to release it as to the deposits made in 1935. One condition of the bond, among others, is that the depositary bank will pay to the proper officials of the county all funds deposited under the terms of the said bond. The mere fact that the period contemplated by the bond for making deposits may have expired before the failure of the bank does not, in our opinion, relieve the sureties upon this bond from the obligation and liability to pay over all funds deposited during the period of the bond and which remained in the bank at the time it closed. The cases generally support the view that the obligation under bonds conditioned similar to the bond here involved continues though the time has elapsed during which deposits might lawfully be made. 22 R. C. L. 229, § 8; 18 C. J. 589, § 63; United States Fidelity & Guaranty Co. v. City of Pensacola, 68 Fla. 357, 67 So. 87, Ann. Cas. 1916B, 1236; School Dist. No. 75 v. Farmers' State Bank, 182 Minn. 381, 234 N. W. 594; Board of Commissioners v. Citizens' Bank, 67 Minn. 236, 69 N. W. 912; School Dist. No. 18 v. Stomberg, 61 N. D. 6, 236 N. W. 728; Emmons County v. Kleppe, 61 N. D. 536, 238 N. W. 651; Equitable Surety Co. v. Board of Finance of Jackson Tp., 186 Ind. 650, 117 N. E. 860; Bates v. Crane County, Tex. Civ. App., 55 S. W. 2d 610.

■■ "It is a fundamental rule of banking law that in the case of a general deposit of money in a bank, the moment the money is deposited it becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor." 7 Am. Jur. 313. This relationship should be kept in mind in our determination of whether any money deposited under the 1935 bond remained in the bank at the time it closed. The account between the bank and its depositor is a mutual current and running account. When the bank pays out money on the check of the depositor, it is paying off its indebtedness owing the

depositor out of money which is the property of the bank. Our question, therefore, is what application should be made of the payments made by the bank to the county during 1936 . Should these payments be considered as payment of the oldest items of the account, or should they be considered as the payments of the unsecured items which arose by virtue of the deposits of 1936 when there was no effective bond securing these deposits. In this state we have a statute which directs the application of payments by a debtor, the third subdivision of which provides the method of application where it is not directed either by the debtor or the creditor. Subdivision 3 of Section 757, R. C. 1919, provides as follows:

"If neither party makes such application within the time prescribed herein, the performance must be applied to the extinction of obligations in the following order; and if there be more than one obligation of a particular class, to the extinction of all in that class, ratably: 1. Of interest due at the time of the performance; 2. Of principal due at that time; 3. Of the obligation earliest in date of maturity; 4. Of an obligation not secured by a lien or collateral undertaking; 5. Of an obligation secured by a lien or collateral undertaking."

It will be noted that this statute places the debt earliest in date of maturity ahead of an unsecured obligation. This court has twice applied this statute to a current running account, a part of which was secured and a part of which was unsecured, and held that payments on this running account were to be applied to the oldest items thereof without regard to whether the oldest items were secured or unsecured. March v. Butler, 53 S. D. 170, 220 N. W. 461; Furst v. Risse, 56 S. D. 418, 229 N. W. 293. Giving full effect to these two cases, we believe the rule there established would govern our disposition of this case because the nature of the accounts considered in those two cases are the same, so far as the governing principles are concerned, as the current running bank account here under consideration. The items of the accounts in those two cases became blended together in one account in the same manner that the items of a running bank account become blended and only the general balance of the account could be considered due.

In the absence of statutes similar to our Section 757, considerable discord is to be found in the cases wherein the court in the

absence of direction by either party makes application of payments between secured and unsecured debts or secured and unsecured items of a running account. See annotation, 97 A. L. R. 345. However, in view of our statute and its application in the two cited cases, this court is no longer concerned with the difference of opinion as disclosed in the annotation. The statute, we believe, has declared a policy in this state, and even if the statute is not strictly applicable in words to a current running account where the items become blended in one general balance, nevertheless, we are convinced, the general policy declared by the statute should govern in this situation. Whatever application a court might make of payments made without direction by either creditor or debtor, whether it be to debts old or new, secured or unsecured, or pro rata, must at least approach being arbitrary and without much basis in fact. This fact considered together with the divergent views of courts in making application of payments is perhaps accountable for our statute wherein an order of application is fixed. This order as fixed in the statute when applied to the facts now before us, we believe, finds as much reason underlying it as any order of application suggested. We are impressed with the reasoning in the case of Devaynes v. Noble, an English case reported in 3 English Ruling Cases 329. In this case the facts, in so far as the controlling legal principles are concerned, appear to us identical to the facts now before us. We quote at length from the opinion :

"But this is the case of a banking account, where all the sums paid in form one blended fund, the parts of which have no longer any distinct existence. Neither banker nor customer ever thinks of saying, this draft is to be placed to the account of the £500 paid in on Monday, and this other to the account of the £500 paid in on Tuesday. There is a fund of £1000 to draw upon, and that is enough. In such a case, there is no room for any other appropriation than that which arises from the order in which the receipts and payments take place, and are carried into the account. Presumably, it is the sum first paid in that is first drawn out. It is the first item on the debit side of the account that is discharged, or reduced, by the first item on the credit side. The appropriation is made by the very act of setting the two items against each other. Upon that principle, all accounts current are settled, and particularly cash accounts. When there has been a continuation of deal-

ings, in what way can it be ascertained whether the specific balance due on a given day has, or has not, been discharged, but by examining whether payments to the amount of that balance appear by the account to have been made? You are not to take the account backwards, and strike the balance at the head, instead of the foot of it. A man's banker breaks, owing him, on the whole account, a balance of £1000. It would surprise one to hear the customer say, 'I have been fortunate enough to draw out all that I paid in during the last four years; but there is £1000, which I paid in five years ago, that I hold myself never to have drawn out; and, therefore if I can find anybody who was answerable for the debts of the banking house, such as they stood five years ago, I have a right to say that it is that specific sum which is still due to me, and not the £1000 that I paid in last week.' This is exactly the nature of the present claim. Mr. Clayton travels back into the account, till he finds a balance, for which Mr. Devaynes was responsible; and then he says,—'That is a sum which I have never drawn for. Though standing in the centre of the account, it is to be considered as set apart, and left untouched. Sums above it, and below it, have been drawn out; but none of my drafts ever reached or affected this remnant of the balance due to me at Mr. Devaynes's death.' What boundary would there be to this method of re-moulding an account? If the interest of the creditor required it, he might just as well go still further back, and arbitrarily single out any balance, as it stood at any time, and say, it is the identical balance of that day which still remains due to him. Suppose there had been a former partner, who had died three years before Mr. Devaynes—What would hinder Mr. Clayton from saying, 'Let us see what the balance was at his death?—I have a right to say, it still remains due to me, and his representatives are answerable for it; for, if you examine the accounts, you will find I have always had cash enough lying in the house to answer my subsequent drafts; and, therefore, all the payments made to me in Devaynes's lifetime, and since his death, I will not impute to the sums I paid in during that period,—the effect of which will be, to leave the balance due at the death of the former partners still undischarged.' I cannot think, that any of the cases sanction such an extravagant claim on the part of a creditor.

"If appropriation be required, here is appropriation in the

only way that the nature of the thing admits. Here are payments so placed in opposition to debts, that, on the ordinary principles on which accounts are settled, this debt is extinguished.

"If the usual course of dealing was, for any reason, to be inverted, it was surely incumbent on the creditor to signify that such was his intention. He should either have said to the bankers,—'Leave this balance altogether out of the running account between us,'—or,—'Always enter your payments as made on the credit of your latest receipts, so as that the oldest balance may be the last paid.' Instead of this, he receives the account drawn out, as one unbroken running account. He makes no objection to it,—and the report states that the silence of the customer after the receipt of his banking account is regarded as an admission of its being correct. Both debtor and creditor must, therefore, be considered as having concurred in the appropriation.

"But there is this peculiarity in the case,—that it is, not only by inference from the nature of the dealings and the mode of keeping the account, that we are entitled to ascribe the drafts or payments to this balance, but there is distinct and positive evidence that Mr. Clayton considered, and treated, the balance as a fund out of which, notwithstanding Devaynes's death, his drafts were to continue to be paid. For he drew, and that to a considerable extent, when there was no fund, except this balance, out of which his drafts could be answered. What was there, in the next draft he drew, which could indicate that it was not to be paid out of the residue of the same fund, but was to be considered as drawn exclusively on the credit of money more recently paid in? No such distinction was made; nor was there anything from which it could be inferred. I should, therefore say, that, on Mr. Clayton's express authority, the fund was applied in payment of his drafts in the order in which they were presented."

Applying these principles, all money that was deposited in 1935 was withdrawn in 1936, and it follows that there is no liability under the 1935 bond, except as to the defendant, Peterson. As to Peterson the judgment must stand; as to the other defendants the judgment and order appealed from are reversed.

ROBERTS, P. J., and POLLEY and SMITH, JJ., concur.
WARREN, J., not sitting.