[No. 14956. Department One. January 6, 1919.]

AMERICAN SAVINGS BANK & TRUST COMPANY,
*Appellant,* v. NATIONAL SURETY COMPANY
*et al., Respondents.*[1]

COUNTIES (46)—CONTRACTS — CONTRACTOR'S BONDS—"STATUTES"—
MONEY LOANED. A person loaning money to a contractor on county
highway work, is not entitled to file a claim against the contrac-
tor's bond conditioned in the exact language of Rem. & Bal. Code,
§ 1159, to pay all laborers, mechanics, subcontractors, or material-
men and all persons supplying the contractor with provisions or
supplies, "all just debts, dues and demands" incurred in the per-
formance of the work; since the quoted words refer to the classes
of persons named, and do not include creditors or persons loaning
money.

STATUTES (68)—LEGISLATIVE CONSTRUCTION. The fact that the
legislature in amending the act relating to contractor's bonds (Rem.
Code, § 1159), added a proviso that the act shall not apply to money
loaned or advanced, does not show that it construed the former law
(Rem. & Bal. Code, § 1159) to include such items.

Appeal from a judgment of the superior court for
King county, Ronald, J., entered June 11, 1918, upon
findings in favor of the defendant, dismissing an ac-
tion on a contractor's bond, tried to the court. Af-
firmed.

*Farrell, Kane & Stratton,* for appellant.

*C. B. White,* for respondents.

TOLMAN, J.—This action was instituted by appel-
lant for the purpose of recovering money loaned to
the defendant Lane for use in prosecuting his work
under a highway contract, and respondent is sought
to be held by reason of its being surety upon the bond
given in accordance with the terms of that contract.
From a judgment denying a recovery against the bond,
this appeal is taken.

[1]Reported in 177 Pac. 646.

The facts pleaded and proved, so far as necessary to be here set forth, are substantially as follows: In April, 1914, the board of county commissioners of King county let a contract to Lane for the construction and improvement of what is known as the C. L. Morris Road. This was the usual lump sum contract, providing for the payment in monthly estimates as the work progressed, of seventy-five per cent of the contract price, and the retention of twenty-five per cent to be paid thirty days after the completion of the work, upon a showing by the contractor ''that all just debts due all laborers, mechanics, materialmen and persons who have supplied such contractor, or sub-contractor, with material or goods of any kind for this work have been paid.'' The contract further required the furnishing of a corporate surety bond ''conditioned as required by law for the payment of all laborers, mechanics, subcontractors and materialmen, and all persons who shall supply such person or persons or subcontractors with provisions or supplies for the carrying on of such work, all just debts, dues and demands incurred in the performance of such work.'' In due course the bond was furnished, upon which the respondent was bound as surety, conditioned in the exact words of the contract which have just been quoted.

It is not necessary to set out here the various transactions which took place between the appellant and the contractor, but for present purposes it is sufficient to say that the appellant loaned the contractor a large sum of money, and he assigned the proceeds of the contract to the appellant as security for such loan. Appellant received the several payments made by King county during the progress of the work, and, by stipulation, afterwards, and after crediting all of such payments, filed its lien claim, and now seeks judgment against the bond for upwards of $16,000.

It will be observed that the language of the contract and the conditions of the bond are the exact language of the act of 1909 (Laws of 1909, p. 716; Rem. & Bal. Code, § 1159). And the appellant argues that the language of this act should be construed as though the last clause thereof was preceded by the words "and will pay," so that the clause would read, "and will pay all just debts, dues and demands incurred in the performance of such work," contending that we have so construed the law in effect by our holding in *Title Guaranty & Surety Co. v. Coffman, Dobson & Co.*, 97 Wash. 211, 166 Pac. 620. A reading of that case without an examination of the record and without reference to the cases on which it is based might lead to that conclusion, but when the record is examined it will be found that the bond there sued upon, in lieu of the last clause of the statutory condition, contained the words "and shall well and truly and faithfully pay all just debts, dues and demands incurred in the performance of said contract," making it clear that the surety had thus contracted to pay all such debts, dues and demands without reference to the requirements of the statute; and since money loaned is a just debt, the court was bound to permit a recovery wholly as a matter of contract and without reference to the language of the statute upon which the present case turns.

It becomes necessary then to inquire the meaning of the statutory language which is incorporated in the bond in this case and in the contract in pursuance of which the bond was given. In *Puget Sound State Bank v. Gallucci*, 82 Wash. 445, 144 Pac. 698, Ann. Cas. 1916A 767, which like *Title Guaranty & Surety Co. v. First Nat. Bank of Hoquiam*, 94 Wash. 55, 162 Pac. 23, turned upon the language of the contracts and bonds, just as did the *Coffman-Dobson* case, and in

none of which the language of the statute was controlling, Mr. Justice Parker, speaking for the court, said:

"If the solution of this problem rested alone upon the language of the bond and statute, there would be fair ground upon which to rest the argument that the words 'all just debts, dues and demands incurred in the performance of the work,' not being preceded by the conjunctive 'and,' related to debts, dues and demands incurred and payable from Gallucci to the persons specifically named therein, to wit, 'laborers,' 'mechanics,' 'subcontractors,' 'materialmen,' and persons furnishing 'supplies for carrying on of said work.' "

And again:

"We cannot escape the conclusion that this provision of the contracts includes debts incurred by Gallucci of the nature here involved; that is, that he incurred such debts to the bank 'in the performance of said work,' though this conclusion might not be correct where the bank's right rested alone upon the language of the bonds and statute."

We are convinced, by a careful reading of the act of 1909 as a whole, that the legislature intended it to mean just what Judge Parker said there were fair grounds for holding it to mean, i. e., that the words "all just debts, dues and demands" refer to the classes of persons immediately thereinbefore named, so that the only logical construction is that quoted from the *Gallucci* case. If the legislature intended otherwise, why did it, throughout the entire act, refer to the persons mentioned in § 1, namely, laborers, mechanics, subcontractors, materialmen, and those who furnished supplies, and nowhere mention creditors, or use any term which would cover those holding claims other than for labor, materials or supplies? The form of the notice provided in § 3 of the act should not, of course, be permitted to override or modify any ex-

press provisions which precede it, and yet this form is eloquent in expressing that the legislature had only in mind the classes specifically mentioned in § 1 of the act.

It should be borne in mind that the legislature had in view here public works and buildings and was providing security and protection only to those who, if the work were private in its nature, would be protected by the lien laws. In other words, the bond given under this statute and in the statutory language becomes a substitute for the right of lien which would exist were the work private. And, therefore, looking to analogous lien cases for a rule as to who may claim under the bond, we find the prevailing doctrine to be that one who loans money is entitled to no lien therefor. *Lawson v. Higgins,* 1 Mich. 225; *Steamboat James Battle v. Waring,* 39 Ala. 180; *Dart v. Mayhew & Co.,* 60 Ga. 104; *Cadenasso v. Antonelle,* 127 Cal. 382, 59 Pac. 765; *Lion Bonding & Surety Co. v. First State Bank* (Tex. Civ. App.), 194 S. W. 1012.

Hence it logically follows that one who loans money to a contractor on public work cannot claim under the statutory bond.

Nor are we impressed by the argument that the legislature in 1915 (Laws of 1915, p. 61; Rem. Code, § 1159), when it amended the act of 1909 (Laws of 1909, p. 716; Rem. & Bal. Code, § 1159), by leaving out all reference to debts, dues and demands, and by adding a proviso to the effect that the provisions of the act shall not apply to any money loaned or advanced, thereby construed the former act as appellant would have it. It seems to us more logical to say that the legislature of 1915 for some reason feared that this court or some other court might so construe the act against its intent, and by amendment it made haste to

remove all possibility of such a construction beyond any question or doubt.

Our conclusions upon this branch of the case make it impossible for the appellant to recover in any event, and it is therefore unnecessary to discuss the other questions raised.

The judgment of the court below is right, and is therefore affirmed.

MAIN, C. J., MITCHELL, MOUNT, and CHADWICK, JJ., concur.