FEUCHT ET AL. *v.* CORBETT, ADMR.

[No. 27,035. Filed February 15, 1938. Rehearing denied May 10, 1938.]

*Barnard & Walker* and *Harker & Irwin,* for appellants.
*Thomas M. Ryan* and *William Robison,* for appellee.

FANSLER, J.—The appellants filed a verified claim against the estate of Albert E. Betts, based upon two promissory notes, aggregating $25,000, executed after the death of Albert E. Betts by the surviving partners of the firm of A. F. Cohee & Company, of which Albert E. Betts was a partner at the time of his death. The notes were executed to evidence a loan of funds borrowed for the purpose of being used, and actually used, in completing the performance of a construction contract with the New York, Chicago & St. Louis Railroad Company. There was a trial by the court, and judgment for the defendant, from which the claimants appeal.

Error is assigned upon the overruling of appellants'

motion for a new trial. The motion questions the correctness of the result under the evidence, in which there is no substantial conflict.

In the year 1919, Albert E. Betts, A. F. Cohee, and Hez M. Cohee formed a partnership under the firm name and style of "A. F. Cohee & Company." The partnership was often known and referred to as "A. F. Cohee Company." The partnership engaged in the construction of roads, streets, and similar enterprises. On September 3, 1925, the partnership, having learned that the railroad company intended to let a contract for the construction of a project in Illinois, communicated with the company for the purpose of procuring an invitation to bid for the construction of the work. The communication, a letter, disclosed the character of the firm, the names of the partners, their financial ability, ability to give bond, gave a list of their equipment, and undertook to establish their ability to undertake and complete the work contemplated. In response to this communication, on October 14th, the railroad company invited the partnership to submit a bid, and furnished complete and detailed plans and specifications. On October 22nd, the partnership submitted a bid, by which it proposed to do all of the work and furnish all of the material necessary to complete the project according to the plans, and in the manner indicated by the specifications, for the total price of $82,571.91. The letter in which the bid was transmitted contained the following statement: "For the purpose of procuring estimates during the progress of the construction of said work we hereby submit the following itemized bid per unit of its respective kind." This was followed by an itemized unit bid totaling $82,055.81. It thus appeared, from the face of the proposal, that the total of the unit bids was less than the total price bid. On October 28th, the rail-

road company communicated with the partnership, by letter, the material part of which is as follows:

"We will accept your proposal to do the work at unit prices specified in your letter of October 22nd, the work to be commenced soon as can be arranged.

"We will have contract prepared and submit for your signature soon as can be arranged, and understand, as per our conversation, that you will arrange for bond covering in amount of $62,000.00."

The district engineer of the railroad company testified that, between the time of receiving the bid and dictating the above letter, he had a conversation with A. F. Cohee: "To the effect that we accepted his proposal and for him to go ahead with the work as stated in this letter. We figured the total of the bond by estimating the total lump sum of Mr. Cohee's bid and took 75% for the amount of the bond, which resulted in the figure of $60,000. Mr. Cohee was told at that time that he would have to furnish a bond of $60,000, to which he agreed and he later furnished the bond." In a very short time after receipt of the letter of October 28th, and during the lifetime of Albert E. Betts, the partnership began the performance of the contract, with the knowledge of the railroad company and under the supervision of an assistant engineer. The work went forward continuously from that time. On November 27th following, Albert E. Betts died. The work was continued without interruption. On December 5th the chief engineer wrote to the railroad company's attorney, at Toledo, Ohio, for the purpose of furnishing information as a basis for a written contract covering the work in question. In his letter he stated that the successful bidder was the A. F. Cohee Company, of Frankfort, and that: "This is not a corporation but a partnership, the names of the partners being: A. F. Cohee, H. M. Cohee and A. E. Betts. Mr. Betts died last week and do not know what change

this will make in the company." The company attorney responded: "Since the Cohee Company is a partnership, the Contractor appears as A. F. Cohee and H. M. Cohee. In view of Mr. Betts' death, it was not proper to include his name as a partner." A written contract was prepared and signed. It recited that the agreement was made and entered into "between A. F. Cohee and H. M. Cohee, co-partners doing business as 'The A. F. Cohee Company.'" It was signed by A. F. Cohee and Hez M. Cohee. The chief engineer, in his letter to the railroad company's attorney, did not advise that he had told the partners that the proposal was to be accepted, subject to conditions which they had agreed to, and that they were to go to work, nor did he advise that the work had progressed on the contract, thus consummating it. The attorney may have understood that no contract had been entered into. The bond, which was required, had been executed upon the credit of the three partners before the death of Mr. Betts, and the chief engineer had been notified of its execution and of an attempt to deliver it to him.

During the progress of the work the contractors were in need of funds to complete the contract, and borrowed the $25,000 here involved. The notes were signed by A. F. Cohee & Co., and by A. F. Cohee and Hez M. Cohee. All of the money borrowed was used for the purpose of performing the work contemplated by the contract.

Where a partnership is a party to an executory contract, the death of a partner does not terminate the contract, nor does it dissolve the partnership, with respect to participation in the benefits or the liabilities involved in such an executory contract. There seems to be no contention between the parties upon this score. See *Kimmel et al.* v. *State ex rel. Anderson Banking Co.* (1920), 75 Ind. App. 168, 128 N.

E. 708, and *Dickson et al.* v. *Indianapolis Cotton Manufacturing Co.* (1878), 63 Ind. 9. If there was a contract between the partnership and the railroad company, prior to the death of Mr. Betts, he was a party thereto and his estate was entitled to a share in the benefits or profits, and was responsible for the liabilities involved. It will be noted that the railroad company did not accept the proposal made by the partnership, so that no contract was thus created, but that, after receipt of the proposal, there was a conversation between one of the partners and a representative of the railroad company in which a bond was agreed upon, and the railroad company then submitted a counter-proposal, consistent in every respect with the original proposal, except as to the bond and the contract price, which was to be based upon the units rather than the lump sum bid. Immediately following the submission of this counter-proposal, the partnership began work on the project, with the knowledge, and under the supervision, of a representative of the railroad company. If nothing further had been done to evidence an agreement, a meeting of the minds, this would have been sufficient, and, upon completion of the work according to the plans and specifications, the partnership could have collected the amount indicated in the railroad company's counter-proposal, and no more, and it cannot be doubted that the estate of Albert E. Betts would have been entitled to a share in the profits, had there been profits, and it cannot be doubted that his estate would have been responsible for partnership obligations arising out of the performance of the contract. But appellee contends that, since there was a written contract executed after the death of Albert E. Betts, there was no previous contract, and that the surviving partnership, or the surviving partners, had no power to bind him in the written contract, and that he or his estate is not a party to it.

It is noted that the written contract is but an affirmance of that which had previously been agreed upon. The plans and specifications provided in minutest detail the character of the work and the method of performing it, and the compensation to be paid. The work had already begun and was progressing toward completion. It is clearly apparent that no change in the agreement, or the character of the work, or the compensation, was contemplated by the contract, and the conclusion cannot be avoided that it was the understanding of the parties that work was to begin immediately, and that thereafter the terms of the agreement were to be reduced to writing as evidence of the contract already entered into, and not that any new or different contract was to be made after the beginning of performance. Such contracts need not be in writing, although in this case all of the substantial terms and conditions were in writing, consisting of the written plans and specifications, the written proposal, and the written counter-proposal. There was no written acceptance of the counter-proposal, it is true, but there seems to have been an oral understanding before it was written; and the immediate beginning of work upon the project, by the partnership, under the supervision of the railroad company, sufficiently shows that there was a meeting of the minds of the parties and an acceptance of the counter-proposal by the partnership. The written contract not only does not negative such a conclusion, but, since it is in terms but a ratification, it confirms the conclusion that there was a meeting of the minds at the time work was begun.

As a general rule, a surviving partner has no power to enter into or make any new contracts after the death of his partner, but this rule is subject to an exception, founded in sound reason, in the case of contracts which are incidental to, and necessary in the carrying out of, the contracts by which the part-

nership was bound prior to the death of the partner, or contracts necessary or appropriate to the settling of the affairs of the partnership. 20 R. C. L., p. 998. In Rowley on Modern Law of Partnership, §618, p. 816, it is said: "Winding up the partnership business must necessarily include the closing up of those obligations which are binding upon the firm, hence the surviving partner has the authority, in general, to complete such contracts, existing at the death of the deceased partner, as do not call for the personal skill and efforts of the deceased partner, and he may borrow, in the firm name and upon firm property, for such purpose." The partnership was obligated to the railroad company to complete its contract. It had given a bond guaranteeing performance, and was obligated to the sureties to complete the work. If money was needed to purchase material, labor, or equipment, it was because of the existing obligation to complete the work. Procuring the money was not a new venture, but merely an incident to the old one. It is not disputed that the money borrowed, evidenced by the notes, was procured for the purpose of use, and was used, in the performance of the contract with the railroad company. The transaction comes within the well-recognized exception to the rule that a surviving partner cannot borrow money and bind the partnership estate and his deceased partner's estate.

The appellee contends that the manner of carrying out and liquidating the business of a surviving partnership is fixed by statute, and that this method is exclusive; that therefore the surviving partners had no power to borrow money or continue the contract, since they did not comply with the Surviving Partnership Act for a considerable period of time, and until after the money here involved was borrowed. It is well settled, however, that the statutes in question were not designed to, and do not, deprive a

partner of any of the powers which he theretofore had in the settlement of a surviving partnership estate, and that no forfeiture is attached to a failure to file an inventory and otherwise proceed under the statute. It has been said that:

"The statute relative to surviving partners does nothing more than place certain restrictions upon the power of surviving partners, by requiring the filing of inventories, appraisements, lists of liabilities, etc., and by requiring the filing of a bond. The nature and extent of the interest in the partnership property which pass to him on the death of his partner are not changed or affected in any way by the statute, nor does the statute purport to direct or affect the manner in which he may dispose of and apply the firm assets. In this respect the surviving partner is left precisely where he was before the enactment of the statute.

"The inventories, bond, etc., are required to insure that he will properly administer his trust and do the precise things which he was previously required to do."

*First National Bank of Peru* v. *Parsons, Assignee* (1891), 128 Ind. 147, 149, 27 N. E. 486, 487; *Havens and Geddes Co.* v. *Harris, etc.* (1894), 140 Ind. 387, 39 N. E. 49; *Walling et al.* v. *Burgess et al.* (1889), 122 Ind. 299, 22 N. E. 419; *Willson et al.* v. *Nicholson et al.* (1878), 61 Ind. 241.

If a surviving partner acts in bad faith, or negligently, he may be answerable. But there is no such question involved here, and it must be assumed that the surviving partners finished the partnership contract in good faith and with reasonable skill and diligence. If any party in interest had desired the protection of the supervision of a court having probate jurisdiction, and the protection of an inventory and bond, it might have been procured upon application under the surviving partnership statute. This was not done. It is well

settled that nothing in the law was intended to, or does, circumscribe or limit in any way the power of the surviving partner with respect to binding the partnership estate, or incurring liability for which the estate of the deceased partner may be liable.

It is insisted by appellee that, since a deceased partner, who was called as a witness, and who had been discharged in bankruptcy, was not discharged as to this liability, he was not competent as a witness against the appellee estate as to any matters which transpired during the lifetime of the decedent, and that his evidence respecting such matters should not be considered. But there is no necessity of considering it. Without it, the facts are clearly established, as indicated above.

The appellee asserts that this judgment should be affirmed upon authority of *Avery* v. *Citizens Loan & Trust Co., Adm'r* (1932), 94 Ind. App. 161, 167, 180 N. E. 23, 25. The parties were different in that case, but the contract between the partnership here and the railroad company is discussed in the opinion. There was no petition to transfer in that case, and we were not then, and are not now, called upon to pass upon that opinion. It appears that some facts were established here which do not seem to have been established in that case. The court says in the opinion: "But it is argued by the appellant that some work was done before the contract was signed and before the decedent died. While this fact may tend to show that the contractors thought they had a contract, yet it of itself does not establish the contract." But it is also established here that the railroad company's representative expected the contractors to begin work immediately, and that they did begin work under the supervision of the assistant engineer of the railroad company, and that they procured the bond,

which it was agreed should be given, all before the death of Mr. Betts.

The facts are not in dispute. The appellants are entitled to recover.

Judgment reversed, with instructions to enter judgment for appellants for the amounts shown to be due on the notes sued upon.

Roll, C. J. absent.