STATE for the use of DON'S HEAVY HAULING, INC., Respondent

v.

FRANK D. MALONE CONSTRUCTION CO., et al., Appellants

(129 N.W.2d 900)

(File No. 10092. Opinion filed August 18, 1964)

**Blaine Simons,** Sioux Falls, for defendants and appellants except Frank D. Malone Construction Co.

**John M. Theodosen,** Garretson, **Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for plaintiff and respondent.

RENTTO, J.  Don's Heavy Hauling, Inc., is engaged in the business of transporting heavy equipment and materials for others.  This action, brought for its use pursuant to SDC 1960 Supp. 28.16, seeks recovery for services rendered by it in transporting equipment and machinery used in the prosecution of work being done on a state highway project in Jerauld and Aurora counties by the defendant contractors under a contract with the South Dakota Department of Highways.  The other defendant is the surety on their performance bond.  The decision of the trial court was in favor of the use plaintiff and concluded that the defendants Hustrulid and Rindahl owed it $2,475.  Defendant Malone had previously been discharged from this claim in bankruptcy proceedings.  This appeal is from the judgment awarding the use plaintiff the amount found due.

The numerous errors assigned collectively present these contentions: (1) that the services involved were rendered for and pursuant to an agreement with Frank D. Malone Construction Co., for which the other contractor defendants are not liable; and (2) that services performed in hauling equipment to and from the job are not within the coverage of the performance bond.

Just prior to the road work in question the three contractor defendants on a joint bid had performed a contract of road work for the State Department of Highways in Harding County, South Dakota.  On that project these defendants as joint adventurers entered into a written contract as to their respective liabilities whereby each contractor agreed to furnish his own equipment

at his own expense. Their bid on the job in Jerauld and Aurora counties was also a joint bid and they orally agreed amongst themselves that their respective liabilities would remain as they were on the Harding county job.

The owner of the use plaintiff was at the public letting in Pierre, South Dakota, when the contract for the project involved was awarded. While there he learned that the State had let this contract to these three contractors as a joint venture. However, he was never advised or had notice of the limiting understanding between them that each had agreed to furnish his equipment at his own expense. On this job Malone did the grading and Rindahl the graveling. Hustrulid did no work on it. The services in issue appear to have been rendered at the request of Malone and for his work on the project. They were all used on the project involved and necessary for its completion.

While the owner of the use plaintiff knew all of these contractors, he was better acquainted with Malone because of other work he had done for him. By reason of this other work Malone at the time the joint adventurers secured this contract, individually owed the use plaintiff money which he was slow in paying. When approached by Malone to render the services here involved he consulted his lawyer who advised him that the three contractors were joint adventurers and as such were responsible for the requested services. He looked to the joint adventure for payment and while the statements were sent only to Malone, the account was carried on his books in the names of the three contractors as a joint venture.

The trial court concluded that the three defendant contractors were joint adventurers and as such were all liable to the use plaintiff for its services in hauling the equipment ordered by Malone. Implicit in this is the determination that in arranging for the services which are the basis of this claim the use plaintiff dealt with Malone not as an individual, but as a member of a joint venture. This view has ample evidentiary support.

Without deciding whether or in what particulars a joint adventure differs from a partnership this court has said that there is the same element of mutual agency in it as in a partner-

ship and that a member of a joint adventure can bind his associates by such contracts as are reasonably necessary to carry on the venture. State ex rel. Crane Co. v. Stokke, 65 S.D. 207, 272 N. W. 811, 110 A.L.R. 761; Fischer v. Bunch, 70 S.D. 240, 16 N.W.2d 541. In 48 C.J.S. Joint Adventures, § 14, the rule is stated thus:

> "It has been held or recognized that, as to third persons who deal with a joint adventurer in good faith and without knowledge of any limitation on his authority, the law presumes him to have been given power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged, and that they become liable on such contracts, notwithstanding they may have expressly agreed amongst themselves that they should not be liable."

A substantially similar statement of the law appears in 30 Am.Jur., Joint Adventures, § 55. See also Taylor v. Brindley, 10 Cir., 164 F.2d 235.

■ That these services were reasonably necessary to carry out the contract is manifest. Accordingly we must hold the trial court's conclusion to be justified. The fact that the joint adventurers had agreed among themselves to furnish their own equipment and be individually liable therefor does not compel a contrary conclusion. Absence of authority to bind his associates is immaterial unless the third party has knowledge of it. As to partnerships this rule is statutory. SDC 49.0301(1). In urging the limiting agreement as a defense the defendant contractors must establish it and also the fact that the use plaintiff had knowledge of it. Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060. The latter they have failed to do. Consequently their limiting agreement is of no avail to them as a defense in this matter.

In the contract under which the joint adventure undertook the work in question it agreed "to pay all just claims for materials, supplies, food, tools, appliances, and labor, and all other just claims incurred by him or any of his subcontractors in carrying

out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims." The conditions of the bond furnished by the defendant surety so far as here material were that the contractors "shall well, truly and faithfully comply with and perform all the terms, covenants and conditions of said contract, * * * and truly pay or cause to be paid * * * all claims incurred for materials, supplies, food, tools, and appliances, in carrying out the provisions of said contract".

The coverage of similar bonds has been considered by this court on several occasions. In these cases the bond was held to cover the items set out: Western Material Co. v. Enke, 56 S.D. 302, 228 N.W. 385, expenditures for repairs to keep the equipment in operating condition; Western Material Co. v. Deltener, 64 S.D. 62, 264 N.W. 207, rentals of equipment; Margulies v. Ogdie, 69 S.D. 352, 10 N.W.2d 513, repairs on tires furnished for trucks used in hauling crushed rock in construction of a highway. Many of the decided cases on similar items are not in accord with our holdings. 43 Am.Jur., Public Works and Contracts, §§ 186 and 187; 40 C.J.S. Highways, § 210. Generally this diversity results from differences in the wording of the obligation in the contract and bond involved. In many of them the scope of that obligation is rather limited.

The pertinent obligation of the bond in this and our cited cases, when considered together with the contract, is extremely broad. In essence it is to pay all just claims incurred in carrying out the provisions of the contract. Moreover our decisions declare that these obligations must be construed most strongly in favor of indemnity. Therefore, we hold that the claim in issue is within the coverage of the bond furnished by the defendant surety.

This result is in accord with the rule announced in our cited cases to the effect that an item is within the coverage of these bonds if it is such that a cost accountant would charge it as a direct expense item to a particular job and not to plant and equipment. In other words the distinction to be observed is between items going into the work or contributing to its execution and those chargeable to general plant and equipment. To mini-

mize their capital investment requirements many contractors hire others to perform this service for them rather than provide it themselves.

As observed in National Automobile & Casualty Ins. Co. of Los Angeles v. Adair, Okla., 292 P.2d 403, "Transporting the equipment to and from the job or project is just as essential as labor on the project". In that case such services were held covered by a bond given to assure payment for labor or materials furnished. Of similar import are Peter Kiewit Sons' Co. v. National Casualty Co., 142 Neb. 835, 8 N.W.2d 192; State for Use of Jones v. Feak, 141 Or. 481, 18 P.2d 203; and Carpenter v. Seaboard Engineering Co., 158 Me. 277, 183 A.2d 216, 219. Accordingly the judgment is affirmed.

All the Judges concur.