STATE ex rel. FARMERS STATE BANK, Plaintiff & Cross Appellant
v. ED COX AND SON, Defendants and
TENNEFOS CONSTRUCTION COMPANY, et al., Defendants
and Appellants

(132 N.W.2d 282)

(File Nos. 10098, 10099. Opinion filed January 6, 1965)

**Stephens, Riter & Mayer,** Pierre, **Cupler, Tenneson, Serkland & Lundberg,** Fargo, N. D., for defendants and appellants.

**Carl W. Miller,** Flandreau, **Woods, Fuller, Shultz & Smith,** Sioux Falls, for plaintiff and cross appellant.

RENTTO, J. The basic question posed by this litigation is whether money loaned to a contractor and used by him in payment of claims that he has incurred in carrying out the provisions of his contract with the state highway authority is within the coverage of his performance bond.

The trial court held that it was and entered judgment for the use plaintiff against Ed Cox and Son, a partnership, and William B. Cox, the surviving partner, for the full amount of its loan with interest, and against Tennefos Construction Company and the United Pacific Insurance Company, the surety, in a lesser amount, but without interest prior to the entry of judgment. The Coxes, the partnership and the surviving partner, did not contest the action nor do they take any part in these appeals. The other defendants appeal from the judgment entered against them and the use plaintiff cross appeals from the part of the judgment denying it interest before judgment.

The following findings of the trial court delineate the factual background necessary for our consideration of the basic question.

"II

"On or about August 25, 1955, the defendants Tennefos Construction Company and Ed Cox and Son entered into a contract with the Department of Highways, State of South Dakota, acting by and through its state Highway Commission, to furnish all materials, appliances, tools, food and labor of every kind, and to construct various items of work in connection with the construction and improvement of a portion of the State trunk highway in Lyman County, South Dakota, and such defendants, who are therein designated as the contractor, therein further agreed as follows:

"The said Contractor further agrees to pay all just claims for materials, supplies, food, tools, appliances, and labor, and all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims.'

## "III

"To secure the performance of such contract, the defendants, Tennefos Construction Company and Ed Cox and Son as Principals, and the defendant, United Pacific Insurance Company as Surety, furnished a certain performance bond running to the State of South Dakota in the sum of $408,671.84, wherein such defendants agreed:

"'NOW THEREFORE, The condition o f the foregoing obligation is such that if the said principal shall well, truly and faithfully comply with and perform all the terms, covenants and conditions of said contract, on his part to be kept and performed according to the terms and tenor of said contract and shall protect the said State of South Dakota against and pay any excess of costs as provided in said contract, and all amounts, damages, costs, judgments which may be recovered against said State or its officers or agents, or which the said State of South Dakota may be called upon to pay to any person or corporation by reason of any damages arising or growing out of the doing of said work or the repair thereof or the manner of doing same, or the neglect of said Principal or his agent or servants, or the improper performance of the said work by the said Principal or his servants or agents or from any other cause growing out of the said contract, and if the above bounden Principal, his heirs, executors, administrators or assigns, shall and will and truly pay or cause to be paid the wages stipulated and agreed to be paid each and every laborer employed by the principal, his agent, or sub-contractor and all claims incurred for materials, supplies, food, tools, and appliances, in carrying out the provisions of said contract, then this obligation is null and void, otherwise to remain in full force and virtue.'

## "IV

"In March of 1956, the defendant, Ed Cox and Son

agreed with the use plaintiff to use funds which might be loaned to such defendant by the use plaintiff for the payment of claims for, and the supplying of materials, supplies, food, tools, appliances and labor and all other just claims incurred by Ed Cox and Son in carrying out the provisions of said contract with the Department of Highways and the use plaintiff agreed to supply funds for such purpose.

"V

"Pursuant to such agreement, the use plaintiff thereafter loaned the defendant, Ed Cox and Son, prior to any dissolution thereof, and the surviving partner William B. Cox in the course of his winding up the affairs of the partnership and performing its contracts, sums remaining unpaid in excess of $108,492.42 through October 19, 1956.

"VI

"After crediting payments on the entire amounts loaned to the defendant Ed Cox and Son and William B. Cox, both prior and subsequent to March, 1956, a balance in excess of $149,113.19 has remained unpaid since February 4, 1957.

"VII

"During the period from April, 1956, through October, 1956, the defendant, Ed Cox and Son and the surviving partner, William B. Cox were engaged only in the performance of the contract described in Finding II hereof.

"VIII

"To the extent of $108,492.42 such unpaid loans were in fact used in the performance of such contract by payment of claims for and the supplying of materials, food, tools, appliances and labor and all other just claims incurred by Ed Cox and Son in carrying out the provisions of such contract.

"IX

"To the extent of $108,492.42 use plaintiff's claim was incurred by the defendant Ed Cox and Son and the surviving partner William B. Cox in winding up the affairs of the partnership, in carrying out the provisions of such contract.

"XIII

"There is due and owing to use plaintiff from the defendants Tennefos Construction Company and United Pacific Insurance Company the sum of $108,492.42 without interest prior to the Entry of Judgment."

These conclusions of law are also pertinent to this feature of the case:

"I

"The provisions of said contract for the payment of all just claims incurred by the contractor in carrying out the provisions of the contract and that the contract bond shall be held to cover all such claims and the provisions of the bond for the performance of all the terms, covenants and conditions of said contract include the claim of the use plaintiff for money loaned to Ed Cox and Son and William B. Cox and used in carrying out the provisions of the contract.

"III

"The indebtedness incurred by Ed Cox and Son and William B. Cox the surviving partner to the use plaintiff to the extent of $108,492.42 constitutes a just claim incurred by such contractor in carrying out the provisions of said contract with the Department of Highways.

"V

"The defendants, Tennefos Construction Company and United Pacific Insurance Company are justly indebted to use plaintiff in the sum of $108,492.42 without interest prior to the Entry of Judgment.

"VI

"Plaintiff is entitled to judgment against the respective defendants accordingly."

The primary contention of the defendants is that the coverage of the bond involved is limited by the statute pursuant to which it was furnished and does not include the claim here asserted. Their position is that it is limited to the claims of laborers and materialmen. The only statute we have requiring a bond in connection with highway construction contracts came into our law as Chapter 135, Laws of 1941. It now appears as SDC 1960 Supp. Ch. 28.16. The title of this enactment reads: "An Act For the Protection of Persons Furnishing Material and Labor For the Construction, Repair or Improvements of Public Highways." These features are mentioned in the body of the law. The sufficiency of the title has not been made an issue.

Section 1 of the Act, now SDC 1960 Supp. 28.1601, reads as follows:

"Before any contract is entered into for the construction, repair or improvement of any public highway by the state of South Dakota, or any public corporation within the state of South Dakota, the person to whom such contract is awarded shall furnish a performance bond running to the state of South Dakota in an amount not less than the contract price for the faithful performance of such contract, in the form and conditioned as required by the statutes of the state of South Dakota."

While this says that the bond shall be "in the form and conditioned as required by the statutes of the State" no one has pointed out to us any statute, other than the above, prescribing either the form of such bonds or how they shall be conditioned. Nor has our independent search uncovered any. Ch. 300 of the Laws of 1939, now included in SDC 1960 Supp. Ch. 65.07, which prescribes the form and conditions of the bond when contracts are entered into for public improvements specifically exempts from its effectiveness contracts of the State Highway Commission.

■ The legislature's failure to implement the Act in this regard leaves it incomplete concerning the specific conditions that the bond must contain. The only bond provision prescribed by the Act is for the faithful performance of the contract, and since the form of the contract by SDC 28.0214 is left to the approval of the Highway Commission, that agency determines the conditions of the bond. In the sense that it is required by statute it is a statutory bond, but its specific coverage is not spelled out by statute but rather by the contract. Consequently, we do not feel that the liability on a bond furnished pursuant to this statute is limited to laborers and materialmen. In our view its coverage is determined from the instrument.

From our cases it is apparent that our highway department used a substantially similar form of bond and contract provision long prior to the enactment of Ch. 135, Laws of 1941. March v. Butler, 53 S.D. 170, 220 N.W. 461; Dennis v. Great Northern Construction Company, 53 S.D. 646, 222 N.W. 269; Western Material Company v. Enke, 56 S.D. 302, 228 N.W. 385; Western Material Company v. Deltener, 64 S.D. 62, 264 N.W. 207 and Margulies v. Ogdie, 69 S.D. 352, 10 N.W.2d 513. That the passage of said Act did not cause any change in the form of such instruments is apparent from this case. See also State for Use of Don's Heavy Hauling Inc. v. Frank D. Malone Construction Company, 81 S.D. 1, 129 N.W.2d 900. Nor are we aware of any subsequent legislative effort suggesting its disapproval of the practice.

■■ Our opinions in this field stress the proposition that the obligation assumed under the bond is determined by construing it together with the contract, and when so viewed it is extremely broad. Also emphasized is the principle that the bond should be construed most strongly in favor of indemnity. In J. F. Anderson Lumber Company v. National Surety Company, 49 S.D. 235, 207 N.W. 53, this court in treating a bond and contract provision similar to those here involved wrote:

"In this case, by virtue of the agreement voluntarily assumed by appellant surety, as soon as any just claim is incurred by the contractor for 'materials, supplies, tools,

appliances, labor,' or 'any other just claim' 'in carrying out the provisions of the contract,' the surety becomes liable for payment thereof, if not paid by the contractor. The appellant surety voluntarily undertook an obligation so broad in its terms that it would be difficult to define the extremities of its scope as applied to various possibilities. No case has been cited to us by counsel for either party to this appeal, where the obligation of the surety is shown to be as broad. In a number of cases cited the liability of the surety is to pay all sums 'incurred for labor and material in prosecution of the work,' or 'for labor and materials furnished and supplied or performed in and about said work,' or 'full payment to all persons supplying him labor or materials in the prosecution of the work provided for in said contract,' or 'to pay for all materials used in the construction or repair of the work,' or 'to pay for all materials furnished.' The obligation of appellant surety in this case goes far beyond that in any of the cases cited. It includes, not only 'labor' and 'material,' but 'supplies, tools, appliances, * * * and all other just claims incurred by him or any of his subcontractors in carrying out the provisions of the contract.' "

This construction of the obligation under bonds of this type has not been altered by any of our subsequent cases.

■ In the contract provision involved we do not have a general promise or obligation followed by a specification of items which could be construed as a limitation on the general statement. Rather, we have an enumeration of specific types of claims which is substantially inclusive of every class of claim that has been enforced by our decisions, followed by the agreement to pay "all other just claims incurred by him or any of his subcontractors in carrying out the provisions of this contract,". This we think indicates an intention to include additional liability. The only limitation thereon being that the claim was incurred in carrying out the provisions of the contract. Margulies v. Ogdie, supra. Accordingly, the use plaintiff's claim to the extent it was incurred in carrying out the contract is within the coverage of the bond.

In Pugent Sound State Bank v. Gallucci, 82 Wash. 445, 144 P. 698, Ann.Cas.1916A 767, the same conclusion was reached in a situation strikingly similar to ours. There the bonds in addition to the statutory requirements contained a condition for the faithful performance of all of the provisions of the contract and one of the provisions of the contract was that the contractor "will pay all just debts, dues and demands incurred in the performance of said work,". In construing this language that court said: "We cannot escape the conclusion that this provision of the contracts includes debts incurred by Gallucci of the nature here involved; that is, that he incurred such debts to the bank 'in the performance of said work,' *  *  *."

While the Washington legislature subsequently amended its law to make the provisions of these bonds more restrictive, such action does not detract from the soundness of the Gallucci decision. See Sturtevant Co. v. Fidelity & Deposit Co. of Maryland, 92 Wash. 52, 158 P. 740, L.R.A.1917C, 630; Title Guaranty & Surety Co. v. Coffman, Dobson & Co., 97 Wash. 211, 166 P. 620; and American Savings Bank & Trust Co. v. National Surety Co., 104 Wash. 663, 177 P. 646. As supporting in principle our conclusion see also Title Guaranty & Surety Co. of Scranton, Pennsylvania v. State, 61 Ind.App. 268, 109 N.E. 237, 111 N.E. 19; Southern Surety Co. v. Merchants' & Farmers' Bank, 203 Ind. 173, 176 N.E. 846, 179 N.E. 327; Massachusetts Bonding & Ins. Co. v. Bankers' Surety Co., 96 Ind.App. 250, 179 N.E. 329; National Loan & Exchange Bank of Greenwood v. Gustafson, 157 S.C. 221, 154 S.E. 167.

In support of their position defendants rely heavily on Western Casualty & Surety Co. v. Lash, 67 S.D. 139, 290 N.W. 316, 127 A.L.R. 969. In our view the critical differences in the bonds involved make that holding inapplicable in the circumstances of this case. While the bond there involved, as here, was for the faithful performance of the contract there is nothing to indicate that the contract required the contractor to pay all just claims incurred in carrying out the contract—nor the further agreement that the contract bond shall be held to cover all such claims. As observed in the opinion "the only penalty named in the bond

is payment for labor and materials". That is not the situation here presented. Bonds of that type are much more restricted in their coverage than the one here involved. See J. F. Anderson Lumber Company v. National Surety, supra. The same distinction applies to most of the other authorities urged by the defendants.

As additional support for their view they urge State ex rel. Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13, 265 P. 775. However, there is a significant factual difference in these cases. The borrower in that case was under no obligation to apply the money on a particular contract. Here the use plaintiff was so obligated. Further, the Oregon decision relies on the analogy to the mechanic's lien law. This is contrary to the position taken by our court in the Anderson Lumber Company case. In that case the surety urged the theory of our mechanic's lien law, discussed in Pittsburg Plate Glass Co. v. Leary, 25 S.D. 256, 126 N.W. 271, 31 L.R.A.,N.S., 746, Ann.Cas.1912B 928, as limiting liability under its bond. In dismissing this contention Judge Campbell wrote "Neither the language of the Pittsburg Plate Glass Case nor the theory of law therein set out has any application whatsoever to the case at bar."

Also in another aspect our basic view in this field differs from that in Oregon. They do not recognize extra statutory conditions in a bond, whereas this court has indicated that a bond not in full compliance with statutory requirements is nevertheless enforcible as a common-law bond, or as one voluntarily given. O'Harrow v. Pfutzenreuter, 51 S.D. 221, 213 N.W. 17; Lyman County v. Whitbeck, 54 S.D. 317, 223 N.W. 204; Lowe v. Southern Surety Company, 55 S.D. 623, 227 N.W. 78; Thunder Hawk School District v. Western Surety Company, 58 S.D. 312, 235 N.W. 921. However, as pointed out above we do not consider our statute as specifying limitations in these bonds.

The use plaintiff's brief contains this statement: "As a practical matter, the sureties' position is substantially the same as it would be had the contractor failed to pay the claims for labor and material. They would be valid claims on the bond. So it

doesn't make any substantial difference in the sureties' liability whether it has to pay them to the laborers and materialmen or to the bank whose money was used for that purpose. It is still a just claim incurred in carrying out the provisions of the contract." While this is without legal significance in resolving the problem presented, it is, nevertheless, a trenchant observation.

Anticipating their contract with the state, Tennefos and Cox on June 4, 1955 entered into a joint venture agreement for a division of the work between them. This provided that Cox would furnish a bond to Tennefos, similar in form to the bond they were required to furnish the state for the faithful performance of its part of the agreement. On this bond St. Paul Mercury Indemnity Company was surety. Early in the litigation Tennefos and United Pacific made a motion to add this surety as a party defendant and tendered their complaint, cross complaint, and interpleader against it. The denial of their motion is urged as error.

Bringing in new parties in this type of situation is permitted under Rule 14 of the Federal Rules, but we have not provided for it either by rule or statute. SDC 1960 Supp. 33.04A08 permits such practice only between joint tort-feasors claiming a right of contribution. These defendants wanted the additional defendant in the litigation to settle a controversy purely among the defendants. Our practice does not permit this. Bankers' National Bank v. Security Trust Company, 19 S.D. 418, 103 N.W. 654; Melichar v. Frank, 78 S.D. 58, 98 N.W.2d 345; 67 C.J.S. Parties § 74j; 39 Am.Jur., Parties, § 90. The denial of the motion was proper.

It is also contended that Finding of Fact VIII is not supported by the evidence. We have carefully reviewed the record concerning this, including the audits made of the affairs of the partnership by accountants for each of the parties and their testimony in explanation thereof. Their audits differed in some respects, so at the suggestion of the parties they conferred and prepared a reconciliation of their audits, which was put in evidence. The trial court in its memorandum opinion reviewed this aspect with great care and in detail. Our conclusion is that

the evidence presented a fact question for resolution by the trial judge and that his finding is not contrary to a clear preponderance of the evidence.

In this connection defendants also urge that if they are liable their obligation is not as extensive as found by the court. This contention stems from an understanding reached at a meeting held in March 1956. St. Paul Mercury Indemnity Company, surety on Cox's bond to Tennefos, was apprehensive of the manner in which Cox was carrying out its work on the project. At the instance of St. Paul Mercury, William Cox, Peter Tennefos, the cashier of the use plaintiff and representatives of St. Paul Mercury met at its offices in St. Paul. This culminated in an understanding among them that if the use plaintiff would undertake to finance Cox's continued operation on the project until its completion, exercising control over the finances so that they are used only to cover payroll, supplies and material bills, and equipment rentals incurred in connection with this job, St. Paul Mercury would not object to use plaintiff being reimbursed for such advances out of the monthly progress payments. Their claim seems to be that this agreement diminished the items for which the partnership could use the money thereafter advanced it by the bank.

We think that this agreement with St. Paul Mercury, a stranger to this litigation, could not in any wise alter the liability of the defendants under the bond and contract here in issue. Furthermore, in view of the partnership's need of full financing to carry on the project it seems a strained construction to say that these parties contemplated continued financing for only a part of its needs. That is too restricted an interpretation to put on this language. It is more reasonable to view its meaning as being broad enough to cover all expenditures necessary in completing the project.

On June 1, 1956, Ed Cox and his son William entered into a written agreement dissolving their partnership and stipulating that its business after that date would be carried on solely by Ed Cox. Shortly following this Ed Cox became ill and William, at his request, took over the management of the operation until

the completion of the Lyman County job. The bank had no notice or knowledge of this dissolution. On August 16, 1956, Ed Cox died. Some of the funds constituting the use plaintiff's claim were advanced after his death on notes executed for the partnership by William Cox. Defendants urge that these funds are not an obligation of the partnership.

The death of Ed Cox dissolved the partnership, but it did not terminate it. SDC 49.0603(4). As declared in SDC 49.0602 the partnership continued until the winding up of its affairs was completed. The dissolution resulting from the death of Ed Cox terminated the authority of William Cox to act for the partnership "Except so far as may be necessary to wind up partnership affairs or to complete transactions begun but not then finished,". SDC 49.0605. This is reiterated in SDC 49.0607 wherein it is provided that "After dissolution a partner can bind the partnership * * * (a) By any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution;". Transactions unfinished at dissolution have been held to include road and other construction contracts. Whitesell v. Pioneer Const. Co., Mo.App., 2 S.W.2d 147; Feucht v. Corbett, 214 Ind. 103, 12 N.E.2d 957. See also 40 Am.Jur., Partnership, § 283 and § 304. Funds advanced or furnished to the surviving partner for such purpose are legitimate expenses for which the partnership is liable.

Under SDC 49.0609 William Cox as a surviving partner had the right to wind up the affairs of the partnership. In fact it was his duty. 40 Am.Jur., Partnership, § 294. See cases collected in Uniform Laws, Annotated, Partnership, § 37. He was so engaged when the notes in question were executed. In our view they are proper obligations of the partnership. Defendants argue that because of the dissolution agreement of June 1st he was not a surviving partner when his father died. This dissolution was secret as far as the bank was concerned and the subsequent conduct of William Cox in his dealings with it was consistent with the partnership's continuation. As to the use plaintiff the partnership continued until the death of Ed Cox. 68 C.J.S. Partnership § 364.

Defendants' final contention claims error in the admission of evidence. We have examined these instances and are unable to discover in them any error that was prejudicial.

The use plaintiff claims it should have been allowed interest from September 3, 1957, the date it served process on the defendants. Clark County v. Howard, 58 S.D. 457, 237 N.W. 561, is cited as supporting its view. We do not regard that case as controlling. The conclusion there announced is specifically limited to the facts of that case which we view as vastly different from the situation here presented. Furthermore, the court there points out that "We are not attempting in this opinion to determine when interest should begin to run against sureties generally." Federal Deposit Ins. Corp. of Washington, D. C. v. Western Surety Company, 66 S.D. 503, 285 N.W. 909 does not extend the rule of that case. Also the opinion in the Clark County case contains this significant statement "The surety does not contend that it should not pay any interest until the court has determined the amount of the principal sum which has been embezzled, as some courts do hold."

In this jurisdiction the award of interest is governed by SDC 1960 Supp. 37.1711. That section provides:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

By its terms interest is recoverable when the damages are certain, or capable of being made certain by calculation. The damages here involved do not fall in that category. As we indicated in Beka v. Lithium Corp. of America, 77 S.D. 370, 92 N.W. 2d 156, the person liable is in default for not paying interest only when he knows or can readily ascertain the exact sum of his indebtedness by computation. Even assuming that the defen-

dants had admitted coverage under their bond they could not have known the extent of their liability until that was determined by the court. Accordingly, there was no error in denying interest prior to judgment.

Affirmed.

ROBERTS, P. J., and BIEGELMEIER and HOMEYER, JJ., concur.

HANSON, J., dissents.

HANSON, J., (dissenting). The question presented is whether money loaned by a bank to a subcontractor is within the coverage of a statutorily required public highway performance bond furnished by the main contractor.

In·the absence of statute the use plaintiff Bank would not be in privity and would have no cause of action against either the contractor or his surety. For a cause of action, if any, the Bank must come within the purview of Ch. 135, Session Laws 1941, now SDC 1960 Supp. Ch. 28.16. The title of this act reflects its legislative purpose as "AN ACT Entitled, An Act For the Protection of Persons Furnishing Material and Labor For the Construction, Repair or Improvements of Public Highways." The Act provides that before any contract may be entered into for the construction, repair or improvement of any public highway by the State of South Dakota, the person to whom such contract is awarded shall furnish a performance bond running to the State of South Dakota in an amount not less than the contract price. The condition of the bond must be "for the faithful performance of such contract", SDC 1960 Supp. 28.1601, and every person furnishing labor or material in the prosecution of the work provided in a public highway contract "shall have the right to sue on such bond", SDC 1960 Supp. 28.1602, which remedy is exclusive, SDC 1960 Supp. 28.1604. Cases such as J. F. Anderson Lbr. Co. v. Nat'l. Surety Co., 49 S.D. 235, 207 N.W. 53, decided prior to the passage of the above act are of little or no value in deciding the question of persons covered and protected under our

present law. In the Anderson case the court recognized that the issues involved therein were "not based upon or connected with any statute whatsoever".

Under our present law a performance bond must be conditioned upon the faithful performance of a public highway contract. The statute was intended to protect the State of South Dakota for the faithful performance of every contract entered into for the construction, repair, or improvement of public highways. In addition it protects and affords a remedy to all persons furnishing labor or materials in the prosecution of such work. There are no other beneficiaries. No one else is given the right to invoke the name of the State of South Dakota in an action on the bond. The remedy is exclusive and cannot be enlarged by contract. As the Oregon court stated in State ex rel. Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13, 265 P. 775, " * * * the state highway commission is a board existing purely by statute, and possessing only the powers granted by statute, or those necessarily implied from the powers expressly granted. It can contract for the construction of a highway because the statute authorizes it so to do. It can require a bond from a contractor because the law expressly requires it so to do. It can and must require such bond to be so conditioned as to provide that such contractor 'promptly make payments to all persons supplying him or them [with] labor or materials for any prosecution of the work provided for in such contract,' and upon such bond the aggrieved person is authorized to invoke the name of the state in an action to recover for the value of such labor or materials. The state highway commission, being a board of special and limited powers, was not authorized to exact any other or different bond, or, at least, was not authorized to pledge the name and authority of the state as a plaintiff for the enforcement of any other or different bond. So the state has no standing to enforce as plaintiff any obligation beyond that provided by statute, * * *."

The legislative purpose for the enactment of Chapter 28.16 is clearly expressed in the title and body of the act. It was intended to protect and afford a remedy to laborers and materialmen on highway construction projects to the exclusion of all other

persons. The legislative reason is well founded. Our mechanic's and materialmen lien laws apply only to private construction projects. Such security is not afforded laborers and materialmen on public highway projects. Therefore, performance bonds are now required to equalize the remedies of laborers and material-men on both private and public construction. Chapter 28.16 has no other purpose. Banks and money lenders are outside its purview and protection as they are outside the purview and protection of our mechanic's and materialmen lien laws. In financing a contractor engaged in either private or public construction banks and money lenders may fully secure themselves by mortgages, liens, assignments of contract payments, and other security arrangements. They do not need and in my opinion the legislature never intended them to be beneficiaries of a performance bond required for the protection of laborers and material-men.

In discussing the case of Puget Sound State Bank v. Gallucci, 82 Wash. 445, 144 P. 698, and rejecting its reasoning, the Oregon court in State ex rel. Hagquist v. United States Fidelity & Guaranty Co., 125 Or. 13, 265 P. 775, made the following pertinent observations:

"To go further, we may say that the mere loaning of money to a contractor, even though used by him to pay obligations contracted, is not a debt created in the performance of the work. The parties who loaned the money were in no privity with the parties furnishing the materials or performing the labor. They took no assignment of the borrower's rights under the contract and no obligation from the borrower that it would apply the money upon a particular contract. Had the borrower concluded to build or buy a ship and to pay for it with the money thus loaned, it would have committed no breach of legal duty in so doing. The fact that the corporation used the money to pay for labor or provisions furnished to secure the completion of this contract could not make the lenders privies to the bond. That it was intended that the bond should redound to their benefit

would open the door to a species of litigation that would render it impossible for a small contractor ever to obtain a bond. We have in this country a few large and wealthy contractors from whom a bond of this character would add little or nothing to the security of laborers or material-men, and whose wealth and standing is such that a surety company would consider the giving of such a bond a small risk. The result would be that the small contractor would be crowded out, and a monopoly or road contracting would inure to wealthy contractors thus adding to the cost of improvements. We are not so far from the state of Washington as to be unable to see that this result actually followed in that state as a consequence of the ruling in the Gallucci Case, to the extent that the Legislature of 1915 passed an act providing sub-stantially that money loaned or advanced a contractor should not be held to be included in such bond. Session Laws of Washington 1915, p. 61. Under the views here enunciated, such legislation is unnecessary so far as the highway commission is concerned."