**TENNEFOS CONSTRUCTION CO., Inc., a corporation, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a corporation, Defendant.**

Civ. No. 4166.

United States District Court
D. North Dakota,
Southeastern Division.

Aug. 22, 1967.

Norman G. Tenneson, and Harold A. Dronen, of Tenneson, Serkland, Lundberg & Erickson, Fargo, N. D., for plaintiff.

Philip B. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., and Ellsworth Evans, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant.

## MEMORANDUM AND ORDER

RONALD N. DAVIES, District Judge.

The plaintiff herein, Tennefos Construction Co., Inc. (hereinafter Tennefos), is a corporation under the laws of North Dakota, with its principal place of business at Fargo, North Dakota, and the defendant, St. Paul Fire and Marine Insurance Company[1] (hereinafter St. Paul Fire), is a corporation under the laws of Minnesota, with its principal place of business in a state other than North Dakota. The matter in controversy exceeds ten thousand dollars ($10,000.00), exclusive of interest and costs.

Based on their joint proposal to the State of South Dakota for construction and improvement of a portion of that state's highway, Tennefos and Ed Cox & Son (hereinafter Cox), a co-partnership of Flandreau, South Dakota, were awarded a contract for the work on May 24, 1955. In anticipation of entering into a formal contract with the State of South Dakota, Tennefos and Cox on June 4, 1955, executed a "joint venture agreement" which provided for a division of the work between them. Under this agreement Cox was to "furnish a satisfactory contract bond in the penal sum of $199,334.25 payable to the second party (Tennefos) as obligee similar in form to the contract bond required by the South Dakota State Highway Commission from the parties hereto, and pay the premium therefor."

On June 14, 1955, Tennefos as obligee was given a contract bond by which St. Paul Fire as surety, and Cox as principal, agreed to indemnify the obligee for all loss that the obligee might sustain by reason of the principal's failure to comply with any of the terms of the joint venture agreement.

On August 25, 1955, Tennefos and Cox entered into a formal contract with the State of South Dakota. The contract provided:

"The said Contractor further agrees to pay all just claims for materials, supplies, food, tools, appliances, and labor, and all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract, and further agrees that the contract bond shall be held to cover all such claims."

A contract bond dated August 31, 1955, was furnished to the State as obligee, by United Pacific Insurance Company as surety, with Tennefos and Cox as principals. Part of the consideration given by Tennefos and Cox to induce United Pacific Insurance Company to issue the bond was:

"To indemnify, and keep indemnified, the Company against all loss, costs, damages, expenses and attorneys' fees whatever, and any and all liability therefor, sustained or incurred by the Company by reason of executing or procuring the execution of any said bond or bonds, or any other bonds, which may be already or hereafter executed for or at the request of the undersigned, or renewal or continuation there-

1. St. Paul Mercury Indemnity Company originally issued the bond in question here. On December 31, 1956, it was merged into St. Paul Fire and Marine Insurance Company, the defendant herein.

of; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or enforcing by litigation or otherwise any of the agreements herein contained. Payment of any such amounts to the Company shall be made by the undersigned as soon as the Company shall be liable therefor, whether or not it shall have paid out any portion thereof."

To secure financing for performance of its portion of the work under the joint venture agreement, Cox borrowed from the Farmers State Bank of Flandreau, South Dakota, (hereinafter Bank). On March 23, 1956, St. Paul Fire notified Tennefos that "there are numerous unpaid bills on the part of Ed Cox & Son for work and materials furnished" and requested that "no further funds on this job be released to Ed Cox & Son, in order that our position under the captioned bond, in which you are obligee should not be prejudiced in any way."

On April 3, 1956, St. Paul Fire wrote to the Bank, so far as is here pertinent:

"Should you undertake to finance Ed Cox & Son's continued operations on this project until final completion thereof, under arrangements whereby you exercise control over advances made by you so that such advances are used only to cover payroll, supplies and material bills, and equipment rentals incurred in connection with this job, we shall have no objection to your being reimbursed for such advances out of the monthly progress payments.

"However, inasmuch as labor and material suppliers have an equitable lien on the proceeds of the contract we must ask that you agree that no part of Ed Cox & Son's present indebtedness to you will be paid out of progress payments hereafter received until the job is finally completed, and all labor and material bills incurred on it have been paid. So far as that present indebtedness is concerned you will look only to any excess funds remaining after all labor and material bills are paid on this job, and to any other asset of Ed Cox and Son."

The Bank agreed to the conditions set out and continued to provide financing for Cox. On July 11th and again on August 23, 1956, St. Paul Fire notified Tennefos that no objection would be made to turning over to the Bank any estimated payments that had been made to Tennefos by the State for work done by Cox, and requested that this be done promptly. Tennefos complied in both instances.

When the work to be done by Cox under the joint venture agreement was completed there remained unpaid and outstanding $108,492.42 in bank loans that had been used by Cox in carrying out the project. The Bank commenced an action in a South Dakota state court against Tennefos and Cox as principals, on the bond furnished to the State by United Pacific Insurance Company, as surety, seeking to recover the amount of the unpaid loans. Defense of the action was tendered to St. Paul Fire, the defendant here, but it was declined. Judgment was eventually entered so far as it concerns this action, against Tennefos and United Pacific Insurance Company for $108,492.42, plus costs, and they appealed. The Supreme Court of South Dakota affirmed, State for Use of Farmers State Bank v. Ed Cox & Son, 132 N.W.2d 282, holding that the obligation assumed under the contract bond was to be determined by construing it together with the contract and in doing so, held that coverage under the bond included the contract agreement to pay "all other just claims incurred by him or any of his sub-contractors in carrying out the provisions of this contract." Accordingly, the Bank's claim, to the extent it was incurred in carrying out the terms of the contract, was held to be within the coverage of the bond.

Tennefos paid the judgment and commenced this action[2] against St. Paul Fire seeking to recover the amount paid, together with costs incurred in defending the state action in South Dakota, alleging that the loss sustained was within the coverage afforded by the bond furnished under the terms of the joint venture agreement. St. Paul Fire denied liability, alleging that Ed Cox & Son had fully and faithfully complied with all terms and conditions of the joint venture agreement and that no further obligation existed under the bond.

St. Paul Fire takes the position that its bond did not include coverage for bank loans, even though the funds were used in the prosecution of the work. Western Casualty & Surety Company v. Lash, 67 S.D. 139, 290 N.W. 316, 127 A.L.R. 969. This would be correct if the joint venture agreement and the indemnity bond were the only evidence to be considered.

It is obvious that had the Bank not made the loans, the proceeds of which admittedly were used to pay claims for labor, material and equipment rental, Cox would have been unable to complete the work and St. Paul Fire would have been obligated to do so under the terms of its bond.[3] Under the agreement entered into between St. Paul Fire and the Bank, control was exercised over the loans to insure the funds were "used only to cover payroll, supplies and material bills and equipment rentals."[4] After having induced the Bank to continue financing Cox and prevailing upon Tennefos to transmit progress payments to the Bank to apply on the loans, in the view of this Court St. Paul Fire is estopped from denying that the loans were outside the coverage afforded under the terms of its indemnity bond. Tennefos is entitled to recover the amount paid to satisfy the judgment obtained against it by the

Bank, together with the costs and reasonable attorney fees incurred in defending that action. Judgment will be entered in favor of the plaintiff, Tennefos Construction Co., Inc., and against the defendant, St. Paul Fire and Marine Insurance Company, in the sum of One Hundred Thirty-Six Thousand Two Hundred Fifty-Eight Dollars and Eighteen Cents ($136,258.18), together with interest as provided by law and costs to be fixed and set by the Clerk of this Court.

Counsel for the plaintiff will prepare and transmit form of judgment to the Clerk, in accordance herewith, with the least practicable delay.

It is so ordered.

---

2. Under the terms of the bond furnished by United Pacific Insurance Company, Tennefos, as one of the principals, had agreed to indemnify the company for any loss incurred by reason of executing the bond.

3. St. Paul Fire and Marine did in fact, pay claims for labor, material and equipment rental in excess of $20,000.00 to enable Cox to complete the work.

4. No evidence other than the agreement was presented on this point, but see State v. Ed Cox & Son, 132 N.W.2d 282, 289.